## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| INFOCISION MANAGEMENT CORP., | ) | CASE NO. 5:08 cv 1342 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | AMENDED MEMORANDUM |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| FOUNDATION FOR MORAL LAW, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

***********************************

| | | |
|---|---|---|
| FOUNDATION FOR MORAL LAW, INC., | ) | CASE NO. 5:08 cv 1412 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | AMENDED MEMORANDUM |
| | ) | OPINION AND ORDER |
| | ) | |
| INFOCISION MANAGEMENT CORP., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

These cases involve a variety of claims arising out of the same set of facts. Motions to dismiss are pending in both cases. For the reasons that follow, the cases hereby are consolidated, and the motions to dismiss are denied.

**I. Factual and Procedural Background**

The Foundation for Moral Law, Inc., ("FML") is a non-profit organization with its principal place of business is in Alabama, and is incorporated under the laws of that state.

(FML Complaint ¶ 5.) Infocision Management Corporation ("Infocision") is a Delaware corporation with its principal place of business in Ohio. (*Id.* ¶ 6.)  Forrest Thompson is a citizen of Ohio, and the former Chief Financial Officer and Senior Vice President of Infocision. (*Id.* ¶ 7.) Curtis Stern, also an Ohio citizen, is a former Director of Marketing for Infocision. (*Id.* ¶ 8.)

FML is a charitable religious organization that solicits donations from the general public to support its activities. (*Id.* ¶ 10.) On March 31, 2004, FML entered into a one-year contract for telemarketing services with Infocision (the "Agreement"). (*Id.*) Pursuant to the Agreement, Infocision agreed to make telemarketing calls in FML's name to prospective donors, and to compile a donor list for FML. (*Id.* ¶ 11.) The Agreement was extended for an additional year on November 8, 2004, and later was revised on December 2, 2004. (*Id.* ¶ 10.)

Included in the Agreement was a "Breakeven Agreement" regarding payment by FML for Infocision's services. (*Id.* ¶ 11.) If (because the amount of donations received during the compilation of the donor list did not exceed the costs of performing the work) Infocision incurred a deficit on FML's account, the Breakeven Agreement provided FML with two options for paying the deficit. (*Id.*) Specifically, FML "ha[d] the option to pay the deficit, or allow Infocision to make up to two recalls per donor acquired during the next rolling 18 month period to make up the deficit." (*Id.*) FML selected the latter payment option, and it is the meaning of that contractual provision that gives rise to the core dispute between the parties.

According to its complaint, it was important to FML that its donors were not recalled by Infocision more than twice. (*Id.* ¶¶ 12-13.) FML wanted "to avoid 'donor burnout' or otherwise annoying or overzealous 'spoiling' of [FML]'s donor base." (*Id.* ¶ 13.) FML asserts that during the negotiations leading up to the Agreement, and in negotiations of the subsequent

renewal, Infocision and Curtis Stern assured FML's officers that contractual phrase "two recalls per donor acquired" limited Infocision to no more than two recalls to each donor. (*Id*. ¶ 12.)

On October 12, 2005, FML President, Dr. Richard Hobson, discovered from FML's records that Infocision had recalled one donor at least four times. (*Id*. ¶ 14.) Further examination of the calling records disclosed that, from a total of 63,725 donors, Infocision called 9,602 of those donors more than twice. (*Id*. ¶ 15.) In fact, according to FML, Infocision recalled 5,372 donors three times, 3,642 donors were called four times, and 588 donors were called five times. (*Id*.) Based on Infocision's final report of amounts pledged and received, FML contends that Infocision received, in FML's name, pledges totaling $3,627,477, and actually collected $2,333,063 of that amount. From the recalls exceeding two per donor, Infocision raised $239,031.85. (*Id*.)

Hobson informed Infocision by letter dated October 19, 2005, and by telephone on November 1, 2005, that FML would not be renewing the Agreement. In these communications, FML explained its understanding of the two-recall provision, and requested that Infocision cease recalling any donor more than twice. (*Id*. ¶ 16.) On January 13, 2006, Infocision informed FML that a deficit of $422,159.00 existed on FML's account, and proposed a payment plan. On August 18, 2006, Infocision asked FML to authorize the distribution from a joint bank account of $19,644.79. On October 4, 2006, Infocision offered to accept the $19,644.79 held in the joint account as "final payment," requesting that FML sign an agreement authorizing Bank One to close the account and send the balance of funds to Infocision. (*Id*.) FML refused.

On January 24, 2007, without FML's consent, Thompson, along with other Infocision employees, sent a letter on Plaintiff's letterhead purporting to be from "Dr. Mel

Glenn, Chairman of the Board," to Kim Petroff at JP Morgan Chase directing Petroff to close the joint bank account and issue a check to Infocision for the $19,644.79 balance. (*Id*. ¶ 17.) This letter was sent and delivered by the United States Postal Service. According to FML, the Infocision Defendants wrote and sent the letter with the intent to defraud FML by obtaining the funds in the joint bank account by false pretenses. (*Id*.) On January 30, 2007, Hobson spoke with Thompson via phone, and Thompson admitted sending the letter. (*Id*.) Infocision later offered to write off the balance of FML's account and allow FML to retain the funds remaining on deposit in the joint account.[1] (*Id*.) FML did not respond to this offer. (*Id*.)

Back in October 2007, FML filed suit against Infocision, Thompson, and Stern (the "Infocision Defendants") in this Court (the "Original Action"). The Original Action was assigned case number 5:07CV3121. After FML filed an amended complaint, the Infocision Defendants moved for partial dismissal for failure to state a claim for relief pursuant to Rule 12(b)(6). On May 27, 2008, the Court granted the motion in part and denied it in part, dismissing all but two of FML's causes of action. Shortly thereafter, on June 2, 2008, FML filed a notice of voluntary dismissal without prejudice, which the Court approved that same day.

On June 3, 2008, Infocision filed suit against FML alleging breach of contract and seeking damages in excess of $500,000. That action (the "Infocision Action") was assigned case number 5:08CV1342. FML responded by filing a separate suit, which was assigned the case number 5:08CV1412 (the "FML Action"). In the FML Action, FML asserts claims for breach of contract, misrepresentation, fraud, breach of fiduciary duty, federal RICO, Ohio RICO, and nuisance. In the FML Action, the Infocision Defendants filed a motion for partial dismissal of the complaint under Rule 12(b)(6) seeking dismissal of Counts III through VII on the same bases

---

[1] The parties agree that the instructions in the allegedly fraudulent letter were never followed, and the funds remained on deposit at the bank.

that led to dismissal of those claims in the Original Action. (Doc. No. 6.) FML opposed the motion to dismiss by arguing that the defects present in the earlier dismissed complaint were cured with the filing of the complaint in the FML Action. (Doc. No. 9.) Defendants filed a reply (Doc. No. 11). The motion to dismiss in the FML Action is fully briefed. [2]

In the Infocision Action, FML filed a motion to dismiss the complaint (Doc. No. 5), which Infocision opposed. FML filed a reply (Doc. No. 7), and that motion also is fully briefed.

## II. Law and Analysis

### A. FML's Motion to Dismiss the Infocision Action

In its complaint, Infocision claims it is owed damages based upon charges under the Agreement for which it has not received payment. Infocision also asserts it is owed damages upon an account stated and is entitled to an accounting.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. The Court views the complaint in a light most favorable to the plaintiff, *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998), assumes that the plaintiff's factual allegations are true, *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determines whether the plaintiff has pleaded "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).

This standard of review "requires more than the bare assertion of legal conclusions. *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The complaint must include direct or indirect allegations respecting all the material elements to sustain a recovery

---

[2] Defendants also filed a separate motion for summary judgment (Doc. No. 10), arguing that the Court's May 27, 2008 order in the original action mandates dismissal of Counts III through VII on res judicata grounds. That motion has not been briefed fully and is not yet ripe.

under some viable legal theory. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

FML's motion to dismiss is premised upon its contention that the Agreement is unenforceable. FML's unenforceability argument is, in turn, based upon its claim that Infocision procured its consent to the Agreement through fraudulent means. FML cites Ohio case law stating that an agreement procured through fraudulent means is unenforceable or void. *See Haller v. Borror Corp.*, 50 Ohio St. 3d 10 (1990). In an effort to prove that the Agreement is unenforceable, FML attaches the affidavit of Dr. Richard Hobson, in which he declares that during negotiations Infocision assured FML that the two-recall provision limited Infocision to no more than two recalls per donor. (Hobson Aff., Doc. No. 5-2, ¶ 2.) Hobson states that FML relied upon this interpretation of the two-recall provision in signing the contract. (*Id.*, ¶ 3.)

As Infocision aptly notes in its response to FML's motion to dismiss, FML's argument in support of dismissal relies upon matters outside the pleadings – namely, the Hobson affidavit. It is beyond dispute that when the allegations are viewed in the light most favorable to Infocision, the complaint states valid claims for relief against FML. Under such circumstances, the Court has two options – it can exclude the evidence from consideration and deny the motion to dismiss or convert it to a motion for summary judgment. *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 503 (6th Cir. 2006). If the Court converts the motion to dismiss to a motion for summary judgment, notice must be given to the party opposing the motion to dismiss. *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004).

In its reply, FML makes the bizarre (and completely erroneous) argument that Infocision's opposition to the motion to summary judgment constituted a motion for discovery under Rule 56(f). From this false premise, FML argues that Infocision failed to demonstrate a

need for additional evidence and/or the relevance of such evidence in opposing summary judgment, and therefore the Court should deny Infocision's (imaginary) 56(f) motion, and grant judgment in favor of FML. This argument presupposes (for reasons the Court cannot comprehend) that FML's motion to dismiss already was converted by the Court into a motion for summary judgment – which, in fact, it was not. The entirety of FML's argument is, therefore, a non sequitur. With Hobson's affidavit excluded from consideration, FML's motion to dismiss is denied.[3]

### B. Infocision's Partial Motion to Dismiss the FML Action

FML's complaint includes causes of action for breach of contract, intentional misrepresentation, fraud, breach of fiduciary duty, federal RICO, Ohio RICO, and nuisance. The causes of action are substantially similar to those alleged in the Original Action. Five of those claims (fraud, breach of fiduciary duty, federal and Ohio RICO, and nuisance) were dismissed by the Court pursuant to its May 27, 2008 order. Upon re-filing of the complaint in this action, FML made efforts to amplify the allegations and altered certain legal theories in an apparent response to the Court's previous decision.

Infocision filed a motion to dismiss accompanied by a one-page supporting memorandum. Infocision's motion says nothing more than that Counts III through VII "should again be dismissed for the same reasons as set forth in this Court's [May 27, 2008] Memorandum Opinion [a]nd Order." Infocision neglected even to attach a copy of that memorandum to its motion.

---

[3] At this stage of the proceedings, the Court prefers exclusion of the affidavit and denial of the motion to conversion to summary judgment. The matters discussed in the Hobson affidavit are sure to be disputed. Discovery regarding such matters, to which the Infocision Defendants unquestionably are entitled, has not yet taken place. This will not impact FML's ability to move for summary judgment in accordance with the scheduling order to be issued in connection with the scheduled case management conference.

In opposition to the motion to dismiss, FML correctly noted that the complaint in this case differs from the one dismissed previously, and that Infocision's motion makes absolutely no effort to address those differences. FML went on to explain why, it its view, the changes made to its complaint cured the previously-identified defects and rendered the claims viable.

In its reply brief, Infocision makes some specific arguments in an effort to point out legal flaws in FML's complaint. These arguments, however, appear for the first time on reply, given that Infocision's initial motion was devoid of specifics. FML has not had an opportunity to discuss Infocision's actual arguments since they were not raised in the motion. Those arguments are, therefore, not properly before the Court. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008); *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). While some or all of Infocision's arguments may be meritorious, those arguments have not been presented clearly and cannot be addressed on the current record. For that reason, Infocision's motion to dismiss is denied without prejudice. Should Infocision wish to renew its motion to dismiss, it must do so on or before November 5, 2008. If so, the motion must be accompanied by a supporting memorandum specifically setting forth arguments applicable to the complaint presently on file.[4]

## III. Conclusion

For the foregoing reasons, FML's motion to dismiss the Infocision Action is denied. Infocision's motion to dismiss the FML Action is denied without prejudice to renewal. The Court will conduct a case management conference regarding these actions on Friday,

---

[4] To date, the Court has been wholly unimpressed with the quality of the briefs filed by both sides, which, for the most part, have been noteworthy for their extreme brevity. When it is the product of pointed and concise reasoning, brevity is, without question, a virtue. However, brevity that results from haste and/or carelessness is, equally unquestionably, a serious weakness. Unfortunately, the brevity on display in the parties' submissions to this Court has been mostly of the latter variety. The Court fully expects significant improvement in any future filings in these cases.

November 14, 2008, at noon. Lead counsel, parties, and party representatives must attend in person. The parties should come prepared to discuss possible consolidation of these cases since they involve common issues of law and fact.

**IT IS SO ORDERED**.

Dated: October 22, 2008

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**