**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| INFOCISION MANAGEMENT CORP., | ) | CASE NO. 5:08 cv 1342 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| | ) | |
| FOUNDATION FOR MORAL LAW, INC., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

*********************************

| | | |
|---|---|---|
| FOUNDATION FOR MORAL LAW, INC., | ) | CASE NO. 5:08 cv 1412 |
| | ) | |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | AND ORDER |
| | ) | |
| | ) | |
| INFOCISION MANAGEMENT CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |


This matter is before the Court on separate motions by Infocision Management

Corp. ("Infocision") for partial summary judgment as to Counts III through VII of the complaint

filed by the Foundation for Moral Law, Inc. ("FML") (Doc. No. 10), and for partial dismissal of

the same counts pursuant to Rule 12(b)(6) for failure to state a claim. (Doc. No. 15.) FML filed a

response to the motion for partial summary judgment (Doc. No. 18) but, for reasons unknown, did not file opposition to the motion to dismiss.[1] Both motions are ripe for resolution.

## I. Factual and Procedural Background

FML is a non-profit religious organization with its principal place of business in Alabama. (FML Compl. ¶ 5.)[2] Infocision is a Delaware corporation that performs telemarketing services. (*Id*. ¶ 6.) Infocision's principal place of business is in Ohio. (*Id*.) On March 31, 2004, FML and Infocision entered into a one-year contract for telemarketing services ("the Agreement"), pursuant to which Infocision agreed to make telemarketing calls in FML's name to prospective donors. (*Id*. ¶¶ 10-11.) The Agreement included a "Breakeven Agreement" regarding payment by FML for Infocision's services. The Breakeven Agreement provided FML with two options for making up any deficit incurred by Infocision on its account. FML could pay the deficit or "allow Infocision to make up to two recalls per donor acquired during the next rolling 18 month period to make up the deficit." (*Id*. ¶ 11.) Infocision incurred a deficit on the account, and FML chose the latter payment option. The meaning of that provision (hereinafter the "two recall provision") is the focal point of this action.

According to FML, it explained to Infocision during negotiations that it interpreted the two recall provision to limit Infocision to no more than two recalls to each individual donor. FML claims it emphasized the importance of this interpretation, as it sought "to avoid 'donor burnout or otherwise annoying or overzealous 'spoiling' of [its] donor base." (*Id*. ¶ 13.) FML claims that during the initial negotiation culminating in the Agreement, as well as in

---

[1] The docket indicates that FML's response in opposition to the motion for partial summary judgment (Doc. No. 18) is electronically linked to both the summary judgment motion (Doc. No. 10) and the motion to dismiss (Doc. No. 15). However, neither the caption of the opposition memorandum nor the discussion contained therein make any reference whatsoever to Infocision's renewed motion to dismiss, but instead exclusively address the res judicata issue raised by Infocision's summary judgment motion.

[2] Unless otherwise noted, citations to the FML Complaint refer to the complaint filed by FML in the FML Action, Case No. 5:08CV1412. (Doc. No. 1.)

discussions prior to the Agreement's renewal, Infocision (through employee Curtis Stern) assured FML that Infocision shared FML's interpretation of the two recall provision. (*Id*. ¶ 12.)

FML President Dr. Richard Hobson subsequently discovered from company records that Infocision had recalled one of FML's donors at least four times. (*Id*. ¶ 14.) Examination of Infocision's calling records further revealed that, from a total of 63,725 donors, Infocision recalled 9,602 of them more than twice. Specifically, FML asserts that Infocision recalled 5,372 donors three times, 3,642 donors four times, and 588 donors five times. (*Id*. ¶ 15.) Based upon Infocision's reports, FML alleges that Infocision received a total of $3,627,477 in pledges in FML's name, and actually collected $2,333,063 of that amount. (*Id*.)

Hobson then informed Infocision of FML's intention not to renew the Agreement, citing FML's interpretation of the two-recall provision and Infocision's alleged failure to adhere to that interpretation. (*Id*. ¶ 16.) On several occasions, Hobson asked Infocision to cease recalling any donor more than twice. (*Id*.) Thereafter, on January 16, 2006, Infocision informed FML that a balance of $422,159 remained on the account and proposed a payment plan. On August 18, 2006, Infocision asked FML to authorize the distribution to Infocision of $19,644.79 in funds held in a joint account at Bank One, whereupon Infocision would agree to waive the balance. (*Id*.) Infocision extended this offer again on October 4, 2006, offering to accept the funds in the Bank One account as "final payment." Infocision asked Dr. Mel Glenn, FML's former executive director, to sign an agreement authorizing Bank One to close the account and forward the balance to Infocision. (*Id*.) FML refused.

According to FML, on January 24, 2007, acting without FML's consent, Infocision executive Forrest Thompson and other unnamed Infocision employees created and sent a letter on FML letterhead purporting to be from "Dr. Mel Glenn, Chairman of the Board" to

Kim Petroff at JP Morgan Chase[3] directing Petroff to close the joint bank account and issue a check to Infocision for the balance. (*Id*. ¶ 17.) The letter contained Dr. Glenn's signature, which apparently was generated automatically from a signature Infocision had on file, and was affixed without the knowledge or consent of either FML or Dr. Glenn. The letter was sent and delivered by the United States Postal Service. FML alleges that the purpose of the letter was to defraud JP Morgan Chase and obtain the funds then properly under its control. (*Id*.) JP Morgan, however, never released the funds.

Dr. Hobson spoke with Thompson by telephone on January 30, 2007, and Thompson admitted sending the January 24, 2007 letter. (*Id*.) Infocision then offered to waive any claim to the funds on deposit at JP Morgan Chase and write off the entire $422,159 account balance. (*Id*.) FML never responded to this offer.

In October 2007, FML filed suit (the "Original Action") against Infocision, Thompson and Stern, and after FML filed an amended complaint, defendants Infocision and Thompson moved for partial dismissal for failure to state a claim for relief pursuant to Rule 12(b)(6).[4] On May 27, 2008, the Court granted the motion in part and denied it in part, dismissing all but two of FML's causes of action, leaving only its breach of contract and intentional misrepresentation claims pending against Infocision. Shortly thereafter, on June 2, 2008, FML filed a notice of voluntary dismissal without prejudice.[5]

On June 3, 2008, Infocision filed suit against FML alleging breach of contract and seeking damages in excess of $500,000. That action (the "Infocision Action") was assigned case number 5:08CV1342. FML responded by filing a separate suit, which was assigned the case

---

[3] JP Morgan Chase apparently was the successor by merger to Bank One.

[4] As explained more fully infra, Stern never entered an appearance in the Original Action and apparently never was served with the complaint in that case.

[5] The Court takes judicial notice of the filings in the Original Action, including the First Amended Complaint (Original Action, Case No. 5:07CV3121, Doc. No. 13), the May 27, 2008 Memorandum Opinion and Order (Doc. No. 34), and FML's June 2, 2008 Notice of Voluntary Dismissal (Doc. No. 35). *See* Fed. R. Evid. 201.

number 5:08CV1412 (the "FML Action"). In the FML Action, FML asserts claims for breach of contract, misrepresentation, fraud, breach of fiduciary duty, federal RICO, Ohio RICO, and nuisance. Infocision quickly moved to dismiss the FML Action, and followed up the motion to dismiss with a motion for partial summary judgment. FML opposed both motions, and by memorandum opinion and order dated October 22, 2008, the Court denied the motion to dismiss without prejudice to refiling, finding that Infocision's motion largely failed to address the changes made to FML's complaint and, to the extent it addressed the changes, impermissibly did so for the first time in the reply brief. (FML Action, Doc. No. 13.) The Court, however, did not address the motion for partial summary judgment because, at the time, the briefing had not yet been completed. Thereafter, on November 5, 2008, Infocision renewed its motion to dismiss. (FML Action, Doc. No. 15.)

On December 8, 2008, FML filed an answer and counterclaim in the Infocision Action. (Infocision Action, Doc. No. 18.) FML's counterclaim is in all respects identical to its complaint in the FML action. By order dated December 23, 2008, the Court consolidated the Infocision Action with the FML Action and ordered that all future filings be made in the earlier-filed Infocision Action. (Doc. No. 23.) The matters presently before the Court concern the claims in the FML Action and, by incorporation, the identical claims asserted by FML as a counterclaim in the Infocision Action.

## II. Law and Analysis

### A. Motion for Partial Summary Judgment on Res Judicata Grounds

Infocision seeks summary judgment as to Counts III through VII of FML's complaint, arguing that these claims are barred by the res judicata effect of the Court's May 27, 2008 order in the Original Action. Infocision's view is incorrect. A claim is barred by the res

judicata effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997). The May 27, 2008 order, which disposed of fewer than all of FML's claims, was not a final appealable order. Fed. R. Civ. P. 54(b); *Pavlovich v. National City Bank*, 461 F.3d 832, 836 (6th Cir. 2006) (citing *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995)). At the time, Infocision had not filed an answer or a motion for summary judgment. Accordingly, after the May 27, 2008 order was entered, FML was entitled to voluntarily dismiss the action without prejudice without leave of court or consent of its opponent, which it did on June 2, 2008. Fed. R. Civ. P. 41(a)(1); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394 (1990). A voluntary dismissal under Rule 41(a)(1) leaves the parties as if no action had been brought. *Commercial Space Mgmt. Co., Inc. v. Boeing Co., Inc.*, 193 F.3d 1074, 1077 (9th Cir. 1999) (citing *Wilson v. City of San Jose*, 111 F.3d 688, 692 (9th Cir. 1997)); *Netwig v. Georgia Pac. Corp.*, 375 F.3d 1009, 1011 (10th Cir. 2004). "Rule 41(a) [. . .] in discussing the effect of voluntary dismissal by the plaintiff, makes clear that an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice[.]'" *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 506 (2001). Thus, FML's voluntary dismissal did not convert the otherwise non-appealable May 27, 2008 order into an appealable final judgment on the merits. *See Hall v. Gibson Greetings, Inc.*, 971 F. Supp. 1162, 1165-66 (S.D. Ohio 1997); *Armes v. Noble County Sheriff Dep't*, 215 F. Supp. 2d 1008, 1016 (N.D. Ind. 2002). As a result, when considered for purposes of preclusion in this action, the May 27, 2008 order was not a final

judgment on the merits and, therefore, res judicata does not apply. Infocision's motion for partial

summary judgment on that basis is denied.

### B. Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the

complaint. The Court views the complaint in a light most favorable to the plaintiff, *Bloch v.*

*Ribar*, 156 F.3d 673, 677 (6th Cir. 1998), assumes the plaintiff's factual allegations are true,

*Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determines whether the

plaintiff has pleaded "enough facts to state a claim for relief that is plausible on its face." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

This standard of review "requires more than the bare assertion of legal

conclusions." *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting

*Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995), *cert. denied*, 516 U.S.

1158 (1996)). The complaint must include direct or indirect allegations respecting all the

material elements to sustain a recovery under some viable legal theory. *In re DeLorean Motor*

*Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted).

Infocision seeks dismissal of Counts III through VII pursuant to Rule 12(b)(6) for

failure to state a claim for relief. For reasons unknown, FML did not respond to the motion,

leaving it unopposed. The Court addresses Infocision's arguments seriatim.

### 1. Count III – Fraud

In its fraud cause of action, FML contends that the January 24, 2007 letter sent by

Infocision to JP Morgan Chase was a forgery, and that the attempt to deceive JP Morgan into

releasing the jointly-held funds to Infocision represented an actionable fraud upon FML.

According to FML, it has been damaged because "the funds on deposit, but for the attempted

7

transfer, would be available to the Foundation under the parties' agreements located at Exhibits 1, 2, and 3." (FML Compl. ¶ 35.) FML also claims damages in the form of the monthly fees it pays on the JP Morgan deposit. (*Id.*)

To state a claim for fraud, the plaintiff must allege (a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance. *Groob v. KeyBank*, 108 Ohio St. 3d 348, 357 (2006) (citing *Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d 54, 55 (1987)).

Pursuant to Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "[W]hen deciding a motion to dismiss under Rule 9(b) for failure to plead fraud with particularity, a court must also consider the policy favoring simplicity in pleading, codified in the 'short and plain statement of the claim' requirement of Federal Rule of Civil Procedure 8." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006). "The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003) (citing *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).

Infocision asserts that FML's fraud claim is defective because it fails to properly allege either reliance or damages, given the undisputed fact that JP Morgan did not act upon the

8

letter and never released the funds from the account. FML attempts to sidestep these concerns by arguing that under 18 U.S.C. § 1334 it is a bank fraud to knowingly execute or attempt to execute a scheme or artifice to obtain money under the control of a financial institution by means of false or fraudulent pretenses. However, 18 U.S.C. § 1334 is a criminal statute that FML has no standing to prosecute. It does nothing to vary the required elements of a civil fraud under Ohio law. Because JP Morgan never relied upon the letter to the detriment of either itself or FML, the complaint fails to adequately allege reliance and FML's fraud claim fails as a matter of law.

FML also fails to allege cognizable damages as a result of the supposed fraud. FML makes the curious assertion that, but for the alleged fraud, the funds in the JP Morgan account would be available to it under the terms of the parties' prior agreements. There is, however, no dispute that the funds in fact remain on deposit at JP Morgan in the joint account created by the parties in connection with the Agreement. That Infocision may have attempted to obtain those funds by fraud does not alter that fact. The funds are not currently available to FML, but that is a function of its agreement with Infocision to store the funds in a joint account that necessarily requires Infocision's approval prior to withdrawal. FML's inability to access the funds in the JP Morgan account is not a proximate result of the alleged fraud and does not represent a recognizable form of damage.[6]

Likewise, FML's allegation that it has been damaged by having to pay monthly service fees on the JP Morgan account does not represent a harm proximately caused by the alleged fraud. Indeed, this contention is wholly without merit, and borders on absurd. JP Morgan certainly does not charge a service fee to FML *because* Infocision attempted to remove the funds from the account by fraud. Surely, the fees were charged both before and after the alleged fraud

---

[6] Of course, the matter is now in litigation and therefore the funds are not available to either party, but that is because they have called upon the Court to determine entitlement to the funds and must preserve the status quo in the interim, not because of any fraudulent conduct on Infocision's part.

took place without regard to the events described in the complaint. The account service fee and the fraud are completely unrelated, and FML has failed to allege damages connected to the alleged fraud. For this additional reason, FML's fraud cause of action fails as a matter of law and must be dismissed.

### 2. Count IV – Breach of Fiduciary Duty and Agency Relationship

In the Original Action, the Court dismissed FML's breach of fiduciary duty claim because FML failed to identify the breach of a duty owed independent of the contract since the alleged breach related to the two-recall provision, which is a specific restriction that existed, if at all, only by virtue of the contract language employed by the parties, and could not have been encompassed by any independent fiduciary duty.

To state a claim for breach of fiduciary duty, the plaintiff must allege (1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe the duty, and (3) an injury resulting proximately therefrom. *Strock v. Pressnell*, 38 Ohio St. 3d 207, 216 (1988) (citations omitted). As explained in the Court's May 27, 2008 opinion, FML's breach of fiduciary duty claim fails not because FML cannot identify a separate source of duty, but because the specific breach it complains of – the recalling of donors more than twice – relates to a duty that exists, if at all, only because of specific contractual language creating that duty.[7] This is the exact same complaint that serves as the basis for FML's breach of contract action. "A tort claim based upon the same actions as those upon which a claim of breach of contract is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed."

---

[7] FML's inclusion in the complaint of additional assertions about Infocision's "desire to raise additional funds to satisfy its unconscionable and exorbitant overhead expenses" (*see* FML Compl. ¶ 40), and its insensitivity to "donor burnout" (*id.* ¶ 41) does nothing to add to or alter the nature of the alleged breach of fiduciary duty, which is based entirely on Infocision's recalling of donors more than twice.

*Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (9th Dist. 1996) (citing *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976)). Infocision may have owed FML some duty or duties not delineated in the contract, either by virtue of an agency or Ohio Revised Code § 1716.17, but neither of those sources obligated Infocision to refrain from calling donors more than twice. That restriction was solely a creature of the parties' Agreement. Since the violation of the two recall provision is the only conduct giving rise to the fiduciary breach asserted by FML, no concurrent tort action can be maintained because that same alleged violation forms the basis for FML's breach of contract claim and the duty allegedly breached was created by the contract. In addition, to the extent FML attempts to base its breach of fiduciary duty claim in part upon the alleged attempt to defraud JP Morgan Chase, that action, as explained previously, did not give rise to any cognizable injury, and therefore cannot support FML's claim.

### 3. Count V – Federal RICO

FML asserts a claim for violation of 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity [. . .]." To state a claim under this section, a plaintiff must allege (1) two or more predicate offenses representing participation in a pattern of racketeering activity; (2) the existence of an "enterprise"; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) injury to the plaintiff's business or property sustained as a result of the racketeering activity

engaged in by the enterprise. *VanDenBroeck v. CommonPoint Mortgage Co.*, 210 F.3d 696, 699 (6th Cir. 2000)[8] (citing *Frank v. D'Ambrosi*, 4 F.3d 1378, 1286 (6th Cir. 1993)).

The plaintiff must plead facts sufficient to establish a pattern of racketeering activity. *Vemco, Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994) (citing *Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985)). A pattern consists of at least two predicate acts of racketeering activity occurring within a ten-year period. *Id.* (citing *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 237-38 (1989)). "A pattern is not automatically established, however, by a large number of unrelated acts; the acts must be ordered and arranged so as to exhibit 'relatedness' and 'continuity.'" *Id.* According to FML, the predicate acts forming the basis for the RICO violation involve mail and wire fraud and bank fraud. Rule 9(b), as recited supra, applies to the pleading of predicate offenses sounding in fraud. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).

The predicate acts alleged in the complaint involve (1) telephone calls by Infocision to "[FML]'s donor base and others for the sole purpose of obtaining money under the guise of benefitting [FML] when in fact InfoCision had no intent of and did not turn any of [the] more than $2,300,000 raised over to [FML]," and (2) "attempting to utilize a false document to obtain funds in a financial institution by affixing the signature of Dr. Glenn to correspondence directed to Kim Petroff, J.P. Morgan Chase, for the purpose of obtaining control of $19,644.79 in a joint bank account." (FML Compl. ¶ 54.)

### a. Predicate Offense - Wire Fraud

As to the first predicate act involving Infocision's calls to FML's donors, FML does not even identify which of the many statutorily defined racketeering offenses it believes this

---

[8] *VanDenBroeck* was abrogated on other grounds by the Supreme Court's decision in *Bridge v. Phoenix Bond & Indem. Co.*, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008).

conduct violated. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity"). Presuming that

FML intended to plead this as an act of wire fraud (it is impossible to know since FML did not

respond to the motion to dismiss), its pleading fails to comply with Rule 9(b). The allegations are

short on details, but instead lump together all solicitation calls made across the entire United

States from March 2004 until late 2005 and loosely attribute this conduct to the entire Infocision

organization. FML does not indicate when the purportedly fraudulent communications actually

took place (other than to claim the calls were made "daily" during this period of nearly two

years). Nor does FML identify who placed or received any of the calls.

Assuming arguendo that the telephone solicitations by Infocision could constitute

acts of wire fraud (notwithstanding the undisputed fact that FML hired Infocision explicitly to

make such calls), conglomerating the more than 9,600 allegedly unauthorized telephone calls

does not constitute an appropriately alleged violation of the wire fraud statute. No authority

exists to support such a claim (and, moreover, by failing to respond to the motion to dismiss,

FML abdicated its opportunity to present any).[9] Rather, each purportedly illegal telephone

solicitation must be pleaded as a separate act of wire fraud. As explained by the Seventh Circuit

Court of Appeals,

> loose references to mailing and telephone calls in furtherance of a purported
> scheme to defraud will not do. Instead, the plaintiffs must, within reason, describe
> the time, place, and content of the mail and wire communication, and it must
> identify the parties to these communications. These details are mandated not only
> by Rule 9(b), but by the very nature of a RICO claim. For without an adequately
> detailed description of the predicate acts of mail and wire fraud, a complaint does
> not provide either the defendant or the court with sufficient information to
> determine whether or not a pattern of racketeering activity has been established.
> The complaint must also allege facts from which it reasonably may be inferred
> that the defendants engaged in the scheme with fraudulent intent. Moreover, when
> the complaint accuses multiple defendants of participating in the scheme to

---

[9] *See, e.g., Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (citations omitted)
(arguments not raised in district court by virtue of a failure to respond to motion to dismiss deemed waived).

> defraud, the plaintiffs must take care to identify which of them was responsible for individual acts of fraud.

*Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994) (quotation marks and citations omitted).

Viewed within this framework, the complaint wholly fails to comply with applicable pleading requirements. Not only does FML fail to describe the dates, times, and actors involved in the allegedly fraudulent communications, it also neglects to identify the contents of any (among the thousands of) communications and does not specify what was misrepresented. Having attributed the alleged wire fraud to "Defendants," while failing to specify any direct involvement in the telephonic solicitation scheme by either of the individually named defendants (Thompson and Stern), what appears is a claim that Infocision (an organization with hundreds of employees) generally committed indeterminate acts of wire fraud on a "daily" basis over a period covering nearly two years by making telephone calls to a group of thousands of unnamed individuals spread across the United States. Nothing whatsoever is alleged about the contents of a single one of these calls, nor is anything known about what was misrepresented to the individual donors that caused them (and, in turn, FML) to be defrauded. To top it off, FML alleges (in the vaguest manner imaginable) that Infocision perpetrated this scheme with the intention to defraud FML, yet presents absolutely no facts concerning the fraudulent intent of any individual participant.[10] Under these circumstances, where the parties' Agreement specifically called on Infocision to undertake such telephonic solicitations on FML's behalf, and Infocision is widely engaged in precisely such activity as part of its principal business, FML's claims that the entire relationship was a vast scheme designed with the intention of defrauding FML is, without any specific factual information supporting it, utterly implausible. In sum,

---

[10] Of course, this defect is unsurprising, given that none of the individual participants are even identified.

FML's pleading of the predicate act of wire fraud in connection with the solicitation of donors by telephone is insufficient because it fails to properly identify the time, place, or content of the fraudulent communications, fails to identify the actors involved, and fails to allege facts permitting a reasonable inference that the conduct was undertaken with fraudulent intent.

### b. Predicate Offense - Bank/Mail Fraud

As its second alleged predicate offense, FML claims that the unsuccessful attempt to obtain the funds in the JP Morgan Chase account by forging Dr. Glenn's signature constituted either bank fraud in violation of 18 U.S.C. § 1344 or mail fraud in violation of 18 U.S.C. § 1341. Viewed under either statute, FML's claim does not establish a properly pleaded racketeering offense. While FML is correct in asserting that the bank fraud statute can be violated by an attempt, "[o]nly defrauded financial institutions have standing to assert bank fraud as a RICO predicate." *Herrick v. Liberty League Int'l*, No. 1:07-cv-936, 2008 WL 2230702, at *4 (S.D. Ohio May 28, 2008) (citing *Ward v. Nierlich*, No. 99-14227-CIV, 2008 WL 852789, at *6-7 (S.D. Fla. Mar. 28, 2008); *Honorable v. Easy Life Real Estate Sys., Inc.*, 182 F.R.D. 553, 563 (N.D. Ill. 1998)); *see also Best Deals on TV, Inc. v. Naveed*, No. C 07-1610 SBA, 2007 WL 2825652, at *11 (N.D. Cal. Sept. 26, 2007); *Holmes v. MBNA Am. Bank, N.A.*, No. 5:05-cv-16, 2007 WL 952017, at *1 (W.D.N.C. 2007); *Whitehead v. Gateway Chevrolet*, No. 03 C 5684, 2004 WL 316413, at *6 (N.D. Ill. Feb. 2, 2004). Moreover, whether evaluated as bank fraud or mail fraud, FML must allege that the conduct proximately caused FML damages. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). As discussed supra (in connection with the Court's analysis of FML's

15

fraud claim), FML did not suffer any loss as a result of the alleged attempt to defraud JP Morgan. As a result, the effort to cast those allegations as a RICO predicate fails as a matter of law.

Since neither of FML's claimed predicate acts of racketeering activity has been adequately alleged, FML's federal RICO claim fails as a matter of law because it does not establish the minimum of two predicate acts necessary to demonstrate a pattern. [11]

### 4. Ohio RICO – Count VI

FML also asserts a claim against Infocision for violation of the Ohio RICO statute, formally known as the Ohio Pattern of Corrupt Activities Act ("OPCA"), codified at Ohio Rev. Code § 2923.31 et seq. This claim is premised upon the same predicate offenses as the federal RICO claim addressed supra.

The OPCA is modeled on the federal RICO statute, and courts "have found that the elements for a[n] OPCA violation are the same as those for a [federal] RICO claim." *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 811 (S.D. Ohio 2006) (citing *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 90 Ohio App. 3d 284, 290 (8th Dist. 1993); *State v. Schlosser*, 79 Ohio St. 3d 329, 332 (1997)). To state a claim under OPCA, the plaintiff must allege "(1) conduct of the defendant which involves the commission of two or more of specifically prohibited state or federal offenses; (2) the prohibited criminal conduct of the defendant constitutes a pattern of corrupt activity; and (3) the defendant has participated in the affairs of an enterprise or has acquired or maintained an interest in or control of an enterprise." *Universal Coach*, 90 Ohio App. 3d at 290 (citing *Sedima*, 473 U.S. at 482). OPCA defines a "pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there

---

[11] Infocision also challenges FML's federal RICO claim by asserting that FML fails to properly allege relatedness and/or continuity of the claimed predicate acts, as well as a failure to properly set forth the existence of an enterprise distinct from the RICO person. Because FML alleged the minimum number of predicate acts and the Court finds FML's pleading of both predicates legally insufficient, no decision is necessary as to Infocision's alternative challenges.

has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." Ohio Rev. Code § 2923.31(E).

The Court's conclusion that FML's federal RICO claim was pleaded defectively compels the same conclusion as to the OPCA claim. *See Board of Trustees, Sabis Int'l Sch. v. Montgomery*, 205 F. Supp. 2d 835, 854 (S.D. Ohio 2002). For the reasons explained supra relative to the federal RICO claim, the Court finds that FML has failed to properly allege two or more prohibited criminal offenses. Consequently, FML's OPCA claim is dismissed.

### 5. Nuisance – Count V

FML asserts a claim for nuisance, contending that Infocision's actions violated Ohio Revised Code § 1716.08(A), and therefore constitute a nuisance under § 1716.14(B). Specifically, FML alleges that Infocision raised more than $2,300,000 in charitable contributions in FML's name, but did not turn over a guaranteed portion of that sum as required by § 1716.08(A). Section 1716.14(B), in turn, designates any such violation of the statute as a nuisance.[12]

As explained in the Court's May 27, 2008 order dismissing FML's nuisance claim, this cause of action seeks only injunctive relief. A party has standing to request injunctive relief when it has a "personal stake" in the granting of the injunction. *Crestmont Cleveland P'ship v. Ohio Dep't of Health*, 139 Ohio App. 3d 928, 936-37 (10th Dist. 2000) (citing *Ottawa County Bd. of Comm'rs v. Marblehead*, 102 Ohio App. 3d 306, 316 (6th Dist. 1995)). To establish a personal stake, the party seeking the injunction must show that it faces an immediate and impending threat of irreparable injury. *Id*.

---

[12] It remains unclear whether a private right of action exists under this section. For purposes of the instant motion, the Court assumes without deciding that such a right does exist.

The only substantive change made by FML to its nuisance allegations was its addition of the following vague assertion: "Defendants' unlawful solicitation methods [. . .] are continuing and being employed daily against an unsuspecting public [. . .]." (FML Compl. ¶ 81.) FML still does not allege any continuing conduct by Infocision against FML. Certainly, FML does not contend that Infocision continues to solicit donations in FML's name. To the extent FML predicates this claim upon its generalized allegation that Infocision continues to use "unlawful solicitation methods [. . .] against an unsuspecting public," FML lacks standing to prosecute any such claim since it cannot show that it is being injured on a continuing basis by actions not directed toward FML and with which it has no involvement. Accordingly, FML's nuisance action is dismissed as moot and, to the extent not moot, it is dismissed because FML lacks standing to assert the claim.

### 6. Individual Defendants Thompson and Stern

FML's complaint identified Thompson and Stern as defendants in both their individual and corporate capacities. (FML Compl. ¶¶ 7-8.) In light of the Court's decision relative to the motion to dismiss, the only remaining claims are for breach of contract and intentional misrepresentation, which went unchallenged by Infocision. Neither Thompson nor Stern is a party to the contract with Infocision and, therefore, FML's contract claim relates only to Infocision, the sole contractual counterparty. The intentional misrepresentation claim is premised upon statements allegedly made to FML by Infocision employees Stern and Rebecca Bacchus[13] regarding the interpretation of the two recall provision. Thompson is not alleged to have had any involvement in making those statements. Accordingly, it is clear that none of the remaining claims pertain to Thompson in his individual capacity, so he is dismissed as a party. By contrast, Stern is specifically identified as making the statements giving rise to the intentional

---

[13] Bacchus is not named as a defendant.

misrepresentation claim. While the complaint is short on facts supporting FML's bare assertion that Stern acted in his individual capacity when he made the alleged misrepresentations, viewing the allegations most favorably to FML, the claim against Stern survives the motion to dismiss.[14]

## III. Conclusion

For the foregoing reasons, Infocision's motion for partial summary judgment on res judicata grounds is **DENIED**. Infocision's motion for partial dismissal pursuant to Rule 12(b)(6) for failure to state a claim is **GRANTED**, in its entirety. Counts III through VII are hereby **DISMISSED**. To the extent those same counts are duplicated in FML's counterclaim in the Infocision Action, they are likewise subject to dismissal.

**IT IS SO ORDERED**.

Dated: January 14, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[14] However, the Court has serious concerns about whether Stern ever was served with the summons and complaint in this matter. While the docket shows a return of service executed as to Stern on June 17, 2008 (FML Action, Doc. No. 3), it shows he was served at 325 Springside Drive in Akron, Ohio, which apparently is the location of Infocision's corporate headquarters (and is the same location where FML served Infocision and Thompson). The Court's recollection from proceedings in the Original Action, including statements made during the case management conference, is that Stern left Infocision's employment long before the filing of the FML Action (and perhaps before the filing of the Original Action) and therefore the effectiveness of service upon Stern in this case is in serious doubt. Notably, counsel representing Infocision and Thompson in this matter does not represent Stern, and Stern has not otherwise entered an appearance. In addition, Stern was not served with the complaint, and never appeared, in the Original Action. If FML intends to pursue this claim against Stern any further it must first satisfy the Court that he has been properly served.