UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INFOCISION MANAGEMENT CORP. | ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.: 5:08CV1342 RELATED CASE NO.: 5:08CV1412 <br><br> JUDGE SARA LIOI <br><br> MEMORANDUM OPINION AND ORDER |
| Plaintiff, | | |
| vs. | | |
| FOUNDATION FOR MORAL LAW INC. | | |
| Defendants. | | |

This matter is before the Court on the motion for partial summary judgment (Doc. No. 49) filed by Infocision Management Corporation ("Infocision"). The motion is fully briefed and ripe for decision.

**I. Factual and Procedural Background**

This case concerns a failed business relationship between Infocision and the Foundation for Moral Law ("FML"). FML is a charitable religious organization that solicits donations from the general public to support its activities. (FML Compl., ¶ 10.)[1] On March 31, 2004, FML entered into a one-year contract for telemarketing services with Infocision (the "Agreement"). (*Id*., ¶¶ 10-11.) Infocision agreed to make calls in FML's name to prospective donors and to compile a donor list for FML. (*Id*., ¶ 11.) The Agreement was extended for an additional year on November 8, 2004, and later was revised on December 2, 2004. (*Id*., ¶ 10.) The Agreement included a "Breakeven Agreement" regarding payment by FML for Infocision's services. (*Id*., ¶ 11.) If (because the amount of donations received during the compilation of the donor list did not exceed the costs of performing the work) Infocision incurred a deficit on

---

[1] Citations to the FML Complaint refer to the complaint filed by FML in Case No. 5:08CV1412 (Doc. No. 1).

1

FML's account, the Breakeven Agreement provided FML with two options for paying the deficit. (*Id*., ¶ 11.) Specifically, FML "ha[d] the option to pay the deficit, or allow Infocision to make up to two recalls per donor acquired during the next rolling 18 month period to make up the deficit." (*Id*., ¶ 11.) FML selected the latter payment option, and the meaning of that provision gives rise to the core dispute in this case.

It was important to FML that its donors were not recalled more than twice. FML wanted "to avoid 'donor burnout' or otherwise annoying or overzealous 'spoiling' of [FML]'s donor base." (*Id*., ¶ 13.) FML asserts that during the negotiations leading up to the Agreement, and in negotiations of the subsequent renewal, Infocision assured FML's officers that the contractual phrase "two recalls per donor acquired" limited Infocision to no more than two recalls to each donor. (*Id*., ¶ 12.) On October 12, 2005, FML President, Dr. Richard Hobson, discovered from FML's records that Infocision had recalled one donor at least four times. (*Id*., ¶ 14.) Further examination of the calling records disclosed that, from a total of 63,725 donors, Infocision called 9,602 of those donors more than twice. (*Id*., ¶ 15.) In fact, according to FML, Infocision recalled 5,372 donors three times, 3,642 donors were called four times, and 588 donors were called five times. (*Id*.) Based on Infocision's final report of amounts pledged and received, FML contends that Infocision received, in FML's name, pledges totaling $3,627,477 and actually collected $2,333,063 of that amount. (*Id*.) Infocision raised $239,031.85 from the recalls exceeding two per donor. (*Id*.)

In October of 2007, FML filed suit against Infocision (5:07CV3121), asserting claims for breach of contract, misrepresentation, fraud, breach of fiduciary duty, federal RICO, Ohio RICO, and nuisance. (Original Compl., ¶¶ 19-59.)[2] Infocision moved under Rule 12(b)(6)

---

[2] Citations to the Original Complaint refer to the complaint filed by FML in the Original Action, Case No. 5:07CV3121 (Doc. No. 1).

to dismiss each of the claims set forth in the complaint, with the lone exception being the breach of contract claim. (Motion to Dismiss; Doc. No. 10.) Infocision particularly sought dismissal of FML's intentional misrepresentation and fraud claims because they could not be brought concurrently with an action for breach of contract. (Motion to Dismiss, pp. 6-10.)

After requesting and receiving an extension of time to respond, FML filed an amended complaint in lieu of a response. (Am. Compl.; Doc. No. 13.) The amended complaint set forth FML's account of the alleged inducement in greater detail. (*Id.*, ¶ 25.) On February 19, 2008, Defendants filed a motion to strike the amended complaint and renewed the motion for partial dismissal under Rule 12(b)(6). (Doc. No. 15; Doc. No. 16.) The Court denied Infocision's motion to strike. On April 4, 2008, the Court conducted a case management conference. At the conference, FML's counsel requested further opportunity to respond to Infocision's motion to dismiss. As an explanation for failing to respond timely to the motion, FML's counsel expressed his belief that filing the amended complaint rendered the motion moot. The Court granted FML's request for additional time, providing it with leave until April 24, 2008 to file opposition to the renewed motion to dismiss. The time later was extended, at FML's request, until May 8, 2008. On May 7, 2008, FML filed a two-page opposition to the motion for partial dismissal. (Doc. No. 32.) FML's opposition again did not address the issue of whether it could bring concurrent tort and contract claims. (*Id.*) Instead, it reiterated that filing the amended complaint made the renewed motion moot. (*Id.*)

On May 27, 2008, the Court granted the 12(b)(6) motion in part and denied it in part, dismissing all but two claims: intentional misrepresentation/fraudulent inducement and breach of contract. (Order on Motion to Dismiss, pp. 25-26.) The Court held that the fraudulent inducement claim met the minimum requirements for adequate pleading necessary to survive a

3

motion to dismiss. (*Id.* at 12.) Shortly thereafter, on June 2, 2008, FML filed a notice of voluntary dismissal without prejudice, (Doc. No. 35,) which the Court approved that same day. (Doc. No. 36.)

On June 3, 2008, Infocision filed suit (5:08CV1342) against FML alleging breach of contract and seeking damages in excess of $500,000. (Infocision Compl.; Doc. No. 1.) FML responded by filing a separate suit (5:08CV1412), reasserting nearly the same claims set forth in its original action. (FML Compl.) Infocision filed a motion under Rule 12(b)(6) seeking dismissal of Counts III through VII on the same bases that led to their dismissal in FML's original action, (Doc. No. 6) and it followed with a motion for partial summary judgment. (Doc. No. 10.) On December 8, 2008, FML filed an answer and counterclaim in Infocision's suit. (Doc. No. 18.) Its counterclaim was in all respects identical to the complaint in its own action. (*Id.*) The Court consolidated both actions by order dated December 23, 2008. (Doc. No. 23.) On January 14, 2009, the Court granted Infocision's motion to dismiss Counts III through VII in their entirety, along with the corresponding counts in FML's counterclaim. (Doc. No. 24.)

Of FML's claims, only those for fraudulent inducement and breach of contract remained. On April 30, 2009, Infocision filed this motion and a memorandum in support of partial summary judgment dismissing the fraudulent inducement claim. (Doc. No. 49.) Infocision again argues that "FML cannot convert its breach of contract claim into a tort claim by simply alleging that InfoCision intentionally misrepresented its interpretation of [the recall provision] to fraudulently induce Plaintiff to enter into the Agreement." (Mot., p. 2.) FML filed a response on June 1. (Doc. No. 62.) It also moved for additional discovery under Federal Rule of Civil Procedure 26(f), arguing that "there are deponents available who will support the Foundation's claims, as well as data and information from Infocision, and the Foundation requests reasonable

time to take those depositions and discover the available information." (Opp., p. 11.)

 II. Law and Analysis

    **A. Summary Judgment**

Federal Rule of Civil Procedure 56 governs summary judgment and provides:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2).

The movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In reviewing summary judgment motions, this Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict . . . ." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.  The party opposing a motion for summary judgment:

5

> may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2).

Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). Instead, the non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment. It is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. Nevertheless, if that party shows that it cannot present essential facts to justify its opposition, the court may order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken. Fed. R. Civ. P. 56(f)(2).

### 1. Intent

FML alleges that Infocision "with wanton disregard for Plaintiff's interests and malice intentionally misled Plaintiff's officials and thereby have caused damage to Plaintiff [. . .] ." (FML Compl., ¶ 27.) But FML's evidence that Infocision's representation may have been intentional or malicious is not enough to support its fraudulent inducement claim.

"[U]nder Ohio law, the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981). The rationale is clear: "[i]f a party could simply, by alleging that a contracting party never intended to fulfill his promise, create a tortious action in fraud, there

would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes." *Hertz Commercial Leasing Corp. v. LMC Data, Inc.*, 73 Misc. 2d 1009, 1013, 343 N.Y.S.2d 689, 694 (Civ. Ct. 1973) (holding that a cause of action sounded in contract despite additional allegations of fraud and misrepresentation). Therefore, "[i]t is not a tort to breach a contract, no matter how willful or malicious the breach." *Salvation Army*, 92 Ohio App. 3d at 578. If the gravamen of the complaint is for breach of contract, the cause of action will not be transformed into one sounding in tort by the charge of tortious conduct or the addition of the adverbs "intentionally," "willfully," and "fraudulently." Characterizing the alleged wrongful action in that way only emphasizes that it was done "in utter disregard of the rights of the defendants in error and with an evil and wicked purpose." *See*, *e.g.*, *Ketcham v. Miller*, 104 Ohio St. 372, 377 (1922); *Schwartz v. Bank One, Portsmouth, N.A.*, 84 Ohio App. 3d 806, 810 (Ohio Ct. App. 4th Dist. 1992); *Tibbs v. Nat'l. Homes Constr. Corp.*, 52 Ohio App. 2d 281, 290 (Ohio Ct. App. 1st Dist. 1977).

FML's inclusion of "wanton," "malice," and "intentionally" implies the tortious nature of the alleged misrepresentation, but it does not create a separate tort. Furthermore, though Dr. Hobson's affidavit suggests that Infocision "intentionally misled [FML]" with "wanton disregard . . . and malice" (Hobson Aff. A, ¶¶ 2, 4) that does not change the contractual nature of the claim. Finally, further testimony corroborating the malicious nature of Infocision's actions (*see* Hobson Aff. B, ¶ 3) would not establish a tort. Thus, the Court must look beyond Infocision's intent to determine whether FML has demonstrated genuine issues with respect to

material facts supporting an independent fraud.[3]

### 2. Separate Duty

FML's claims merge because it has not presented evidence suggesting that Infocision breached a duty independent of their contract. "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *See, e.g.*, *Textron Fin. Corp.*, 115 Ohio App. 3d 137, 151 (Ohio Ct. App. 9th Dist. 1996); *Battista v. Leb. Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir. 1976); *Wolfe*, 647 F.2d at 710. Thus, "[t]he tort liability of parties to a contract arises from the breach of some positive legal duty of good faith imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contractual obligation." *Wolfe*, 647 F.2d at 710. Such a rule makes sense because, otherwise, every breach of contract would give rise to a tort.

---

[3] It is worth noting at this point that both parties repeatedly discussed Infocision's intent throughout the litigation of this case. That discussion concerned whether FML alleged an actionable fraud, since fraud ordinarily must be premised upon misrepresentations of past or existing fact, not promises relating to future actions or conduct. *See Williams v. Edwards*, 129 Ohio App. 3d 116, 124 (1st Dist. 1998). In an order denying Infocision's 12(b)(6) motion, the Court cited *Williams* for an exception to that rule: where an individual makes a promise concerning the future, but does not *intend* to keep it. (Memorandum Opinion and Order, May 27, 2008, pp. 11-12.) The Court noted that the claim did not fit within that exception because it was alleged that Infocision intended to perform pursuant to its own interpretation, rather than to enter into the contract with intention not to perform. *Id.* Nevertheless, the Court denied Infocision's motion to dismiss. *Id.* Both parties still dispute the nature of the fraud. Infocision argues that FML does not allege an actionable fraud because the Court found that its claim did not fit within the exception to the *Williams* rule. (Mot., p. 3.) FML ignores that argument (and misconstrues the Court's finding), insisting that "the Foundation has demonstrated that, at the time Infocision made its representations that it would perform and treat the call back provision as if it restricted Infocision to two call backs per acquired donor. Infocision then had no intention of doing so . . . ." (Opp., p. 8.) The entire debate reflects the lack of clarity in FML's claim, since the exact nature of Infocision's alleged "misrepresentation" is unclear. FML continues to characterize Infocision's misrepresentation as a promise not to recall donors more than twice without intention of fulfilling that promise. Perhaps FML ignores the Court's finding because it fears that its claim would not fit within the exception to the *Williams* rule. That fear, however, would be unfounded. FML's fraud claim, properly characterized, is still viable because it *no longer alleges a promise of future conduct*. Instead, the Court has found that Infocision allegedly misrepresented a *present* fact – the manner in which it intended to carry out the contract's terms at that time. Thus, the debate over Infocision's intent is immaterial and should finally be put to rest.

In *Creative Hardwood Floors, Inc. v. Schafer*, Ohio App., 1998 WL 515783 (Ohio Ct. App. 5th Dist. 1998), appellants entered into a construction loan agreement with Bank One Mortgage Corporation. *Id.* at *2-3. Under the agreement, draws on the loan would only be made for completed work. *Id.* After a draw went toward uncompleted work, appellants filed for breach of contract and fraudulent inducement. *Id.* The Fifth District held that the claims merged because they arose solely out of the loan agreement. *Id.* at *4. Because the contract created Bank One Mortgage Company's only duty (to disburse after work was complete), the tort claim was dismissed.

FML tries to distinguish its case from *Schafer*, arguing that it alleges false misrepresentations *in addition* to the breach:

> While the Foundation's fraud and breach of contract claims both initially arise from Infocision's failure to abide by its agreement, the fraud claim is based on Infocision's intention not to perform the Agreement at the time it was entered into, while the breach of contract claim is based on Infocision's purported nonperformance <u>regardless</u> of its intention at the outset or indeed at the time of the breach.

(Opp., p. 8.) Thus, FML argues that its tort claim is not identical in form to its contract claim. Nevertheless, its claims are essentially the same. Infocision's duty lay within the terms of its contract. Its failure to perform pursuant to FML's interpretation of the recall provision gave rise to both claims. Therefore, FML cannot bring both.

In examining Infocision's duty, *Graphic Enterprises, Inc. v. Tas International, Inc.*, Ohio App., 2000 WL 330059 (Ohio Ct. App. 5th Dist. 2000) is particularly instructive. Graphic Enterprises was to supply "remanufactured" fax machines to Tas International, though the written contract did not specify whether they were to be "remanufactured," new, or used. *Id.* at *4. Graphic Enterprises represented that the fax machines would merely have converted power supplies rather than come completely used. *Id.* at *2. After Tas learned that the machines were

9

"used," it brought suit for breach of contract and fraud. The Fifth District held that "[a]ny alleged failure by GEI to supply conforming goods is purely an issue of whether GEI breached the contract." *Id.* at *5. Though the court did not explicitly state that Graphic Enterprises failed to breach a separate duty, its holding falls after its citation of the rule that a separate duty must exist. *Id.* That suggests that Graphic Enterprises' duty was to supply the proper machines, rather than to ensure that Tas correctly understood their agreement.[4]

Like in *Graphic Enterprises*, this case concerns a disagreement over how a party represented its interpretation of an agreement. The agreement's terms arguably were unclear, and one party relied on the other's interpretation for guidance. Yet, like Graphic Enterprises, Infocision's duty lay not in representing its interpretation accurately, but rather in complying with the contract's terms. That duty sounds in contract rather than tort.

Though FML might argue that Infocision breached a separate *duty of good faith* when it misrepresented its interpretation of the recall provision, there is no such duty under Ohio law. In certain limited contexts, there is a positive duty of good faith giving rise to tort rather than breach of contract. *See, e.g.*, *Ruggles v. Bulkmatic Transp. Co.*, 2004 WL 5376213, n. 12 (S.D. Ohio 2004) (noting that a cause of action for the tort of bad faith may exist where there is a special relationship between an insurer and the insured); *Velotta v. Leo Petronzio Landscaping, Inc.*, 69 Ohio St. 2d 376, 378, n.2 (1982) (finding a duty of ordinary care when constructing a residence in a workmanlike manner, but expressing no opinion as to whether there is such a duty when building a residence in the future); *Schrock Road Markets, Inc. v. HODCO Food System,*

---

[4] There are other examples of fraudulent inducement claims merging with breach of contract claims when the duties in question arise solely from the contract. *See, e.g.*, *Homewood Homes, Inc. v. Helwig*, Ohio App., 2009-Ohio-1699, 2009 WL 960775, at *4 (Ohio Ct. App. 10th Dist. 2009) (holding that a letter assuring that windows were installed properly gave rise only to a contractual duty); *Textron*, 115 Ohio App. 3d at 152-54 (holding that a duty to consent to a sublease was uniquely contractual). In each, a party made an alleged "misrepresentation," but the action was predicated on its failure to perform the contract according to the opposing party's expectations.

10

*Inc.*, Ohio App., 2001 WL 722078, at *2-3 (Ohio Ct. App. 10th Dist. 2001) (finding that the sole servicer of a gas deep fryer had a duty of good faith to a purchaser to disclose unknowable potential hazards); *Offenbeher v. Lomax Soful & Foster, Inc.*, Ohio App., 1996 WL 539134, at *6 (Ohio Ct. App. 9th Dist. 1996) (holding that accountants have a duty of ordinary care not to be negligent in preparing income tax returns)[5]; *Burnside v. Leimbach*, 71 Ohio App. 3d 399, 403-04 (Ohio Ct. App. 10th Dist. 1991) (holding that there is a tort duty of good faith in the "unique" physician-patient relationship). But outside of those unique contexts, Ohio does not recognize a general tort of bad faith. *See, e.g.*, *Highway Equip. Co. v. Caterpillar, Inc.*, 707 F. Supp. 954, 958 (S.D. Ohio 1989) ("care must be taken to prevent the transmutation of every breach of contract into an independent tort action through the bootstrapping of the general principle of good faith and fair dealing." (citation omitted)) "There is no separate cause of action for breach of good faith separate from a breach of contract claim. . . . Rather, 'good faith is part of a contract claim and does not stand alone.'" *See Ne. Ohio Coll. Of Massotherapy v. Burek*, 144 Ohio App. 3d 196, 204 (Ohio Ct. App. 7th Dist. 2001) (citations omitted); *see also Littlejohn v. Parrish*, 163 Ohio App. 3d 456, 462, 2005-Ohio-4850, (Ohio Ct. App. 1st Dist. 2005) ("If the finder of fact determine[d] that the . . . refusal to consent . . . resulted in a restraint on alienation . . . then the refusal may be assumed to have been unreasonable, and [defendants] . . . breached the contract."); *Eggert Agency, Inc. v. NA Mgmt. Corp.*, Case No. C2-07-1011, 2008 WL

---

[5] Though the Ninth District in *Offenbeher* found "a duty recognized in every contract that each party will fulfill his obligations with care, skill, and faithfulness, and that the breach of such a duty will give rise to a cause of action in *tort*[,]" that does not apply here. *Offenbeher* concerned an accountant's purported negligence in filing returns. Similarly, *Offenbeher* cited *Wagenheim v. Alexander Grand & Company*, 19 Ohio App. 3d 7 (Ohio Ct. App. 10th Dist. 1983) and *Muir v. Hadler Real Estate Management Company*, 4 Ohio App. 3d 89 (Ohio Ct. App. 10th Dist. 1982), which concerned client actions for negligence against an accountant and attorney. But while *Offenbeher*, *Wagenheim*, and *Muir* considered negligent breaches of good faith *after* contracts were clearly established, this dispute concerns good faith *during contractual negotiations*. FML argues that Infocision's fraud occurred prior to performance, when Infocision misrepresented how it interpreted the Recall Provision to induce agreement. If *Offenbeher* were to apply, however, FML would have had to allege that Infocision accidentally recalled donors more than twice without intention of breaching a clearly understood contractual provision. That is not the case here. It is also unclear whether *Offenbeher*, *Wagenheim*, and *Muir* were even intended to apply to arms-length negotiations in the business context. In the end, the duty cited in *Offenbeher* does not support FML's fraudulent inducement claim.

3474148, at *4, (S.D. Ohio 2008) (noting that *Littlejohn* demonstrates that the good-faith requirement is part of a contract—not part of a separate tort claim). No special duty of good faith arises between businesses entering into ordinary contracts.

FML has offered no evidence supporting the existence of an independent duty, instead assuming a duty to refrain from misrepresentations. Analogous cases universally suggest that misrepresentations give rise to claims for breach of contract. Therefore, FML has failed to establish a genuine issue with respect to the separate duty necessary to bring a tort.

### 3. Separate Damages

FML's tort and contract claims also merge because FML has not established separate damages resulting from Infocision's representation. An action based upon tortious conduct must include actual damages attributable to the wrongful acts of the tortfeasor *in addition* to those attributable to the breach. *See Textron*, 115 Ohio App. 3d at 152 (citing *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.*, 656 F. Supp. 49, 63 (S.D. Ohio 1986)). In other words, "[t]he tort injury must be unique and separate from any injury resulting from a breach of contract." *See Med. Billing, Inc. v. Med. Mgmt. Sci., Inc.*, 212 F.3d 332, 338 (6th Cir. 2000). Such a rule prevents plaintiffs from asking "for 'basically the same damages but two different ways to get there.'" *See Homewood Homes,* 2009 WL 960775 at *4.

In *Medical Billing, Inc. v. Medical Management Sciences, Inc.*, plaintiff sought to terminate a contract after accusing defendant of failing to use the correct formula for calculating compensation. To avoid termination, defendant promised plaintiff that it would use the correct formula. *See Med. Billing,* 212 F.3d at 334. Plaintiff withdrew termination. *Id.* When defendant then still used an incorrect formula, plaintiff sued for fraud and breach of contract. The Sixth

Circuit held that awarding damages for both claims would be redundant, noting that the damages sought (loss in compensation) flowed from the breach. *Id.* at 339. Ultimately, though defendant's manipulation of the formula seemed "fraudulent," that did not entail separate damages.[6]

FML offers no evidence supporting actual damages resulting from the misrepresentation. FML only argues that it is entitled to damages stemming from its spoiled donor base, but it seeks the same damages in its contract claim. Dr. Hobson's affidavits are silent with regard to the damages resulting specifically from fraud, and neither he nor FML suggests how other depositions or affidavits would shed light on the issue. Like in *Medical Billing*, where defendant's representation led only to damages stemming from the breach, the only damages FML seeks resulted from Infocision's purported role in causing donor burnout. Thus, summary judgment on FML's fraudulent inducement claim is also appropriate because FML has failed to establish a genuine issue with respect to separate damages.

**B. Motion for Extension**

FML's motion for extension under Federal Rule of Civil Procedure 56(f)(2) should be denied because further discovery would not result in evidence establishing an independent tort. Federal Rule 56(f) provides:

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> . . . .
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken . . . . Fed. R. Civ. P. 56(f)(2).

---

[6] Other cases also illustrate how fraud claims are subsumed by concurrent contract claims unless supported by independent damages. *See Polen Implement, Inc. v. Toth*, Ohio App., 2008-Ohio-3211, 2008 WL 2582927, at *4-5 (Ohio Ct. App. 9th Dist. 2008) (holding that, because defendant sought the same compensation for equipment repairs on his breach of contract and negligence claims, plaintiff could not bring them separately); *Graphic Enterprises*, 2000 WL 330059 at *5 (holding that the only possible damages were identical to those underlying the breach of contract claim because they stemmed from Graphic Enterprises' failure to send the expected machines); *Textron*, 115 Ohio App. 3d at 143, 53 (holding that, though there was an independent duty to disclose the computer's relocation, any damages stemmed from breach of agreement).

Citing 56(f), FML argues that "the testimony of Rebecca Backus, Forrest Thompson, Kevin Johnson, Ken Dawson, and others, is helpful and relevant, as well as confirmation of data and information from Infocision Management Corp." (Hobson Affidavit B, ¶ 3.) It also argues that "[t]estimony and information from Infocision personnel and third parties will support the Foundation's claims and assist its opposition to the pending motion for partial summary judgment." (*Id.* ¶ 4.)

The 56(f) discovery FML seeks would add nothing to the summary judgment debate because it would establish *neither* a separate duty *nor* separate damages. Testimony as to what was said during contractual negotiations would not support an independent tort. Whether there is a duty to refrain from misrepresenting contractual interpretations or a general tort duty of good faith is a question of law, rather than of fact, so further discovery would not support their existence. In addition, FML does not claim that Infocision breached *any* specific duty in either its complaint or its memoranda to the Court. It is highly unlikely then that the testimony it seeks would lay the factual groundwork for such a duty when it has not even been identified. Furthermore, FML has never suggested that evidence establishing separate damages exists. Its entire discussion of damages to this point has centered around the spoiling of its donor base.

A review of the record reveals that, over the course of two years of litigation, neither party has even raised the question of separate duties or damages. Instead, FML's only argument at this point is a vague request for "helpful and relevant" testimony and "confirmation of data," with no explanation of how they would do anything but corroborate the facts set forth in its complaint. Therefore, further discovery is unnecessary for ruling on summary judgment.

### III. Conclusion

For the foregoing reasons, Infocision's motion for partial summary judgment (Doc. No. 49) is **GRANTED**, and FML's motion for extension (Doc. No. 62) is **DENIED**. The Court finds that FML has failed to establish a genuine issue both with respect to a separate duty and with respect to separate damages. Moreover, further discovery would establish neither. Therefore, FML's tort claim (Case No. 5:08CV1412) and the corresponding count in its counterclaim (Case No. 5:08CV1342) are **DISMISSED**. In these consolidated cases, FML shall proceed against Infocision solely based solely upon the claim set forth in Count I of the complaint in Case No. 5:08CV1412 and the corresponding breach of contract counterclaim in Case No. 5:081342.

**IT IS SO ORDERED**.

Dated: July 27, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**