# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| INFOCISION MANAGEMENT CORP., | ) | CASE NO. 5:08CV1342 |
| | ) | |
| | ) | RELATED CASE NOS: |
| | ) | 5:08CV1412; 5:09CV951 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| FOUNDATION FOR MORAL LAW, INC., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

This matter is before the Court on a series of motions filed in Case No. 5:08CV1342:

- Curtis Stern's motion to dismiss (Doc. No. 66);
- Foundation for Moral Law, Inc.'s motion to further amend the amended complaint (Doc. No. 71); and
- Curtis Stern's motion to amend his answer (Doc. No. 70).

These motions are fully briefed and ripe for decision.

**Background**

The facts surrounding the failed business relationship between Infocision Management (Infocision) and Foundation for Moral Law, Inc. (FML) have been set forth in prior Opinions and Orders, familiarity with which is presumed. To provide context for the pending motions, a brief review of the factual and procedural history will suffice.

FML, a charitable organization, entered into a contract for telemarketing services with Infocision on March 31, 2004. (Doc. No. 1, FML Compl. at ¶¶ 10-11.)[1] According to the contract, Infocision was to make calls in FML's name to prospective donors and to compile a list for FML. (*Id*. at ¶ 11.) The agreement, which was extended on two occasions, included a "Breakeven Agreement," which provided that, in the event of a deficit, FML "has the option to pay the deficit, or allow Infocision to make up to two recalls during the next rolling 18 month period to make up the deficit." (Id.) FML selected the latter option, and the meaning of this provision gave rise to the litigation that followed.

FML wanted "to avoid 'donor burnout' or otherwise annoying or overzealous 'spoiling' of [FML]'s donor base." (*Id*. at ¶ 13.) It claims that during the negotiations, Infocision's representatives assured FML that the contractual phrase "two recalls per donor acquired" limited Infocision to no more than two recalls to each donor. (*Id*. at ¶ 12.) On October 12, 2005, FML President, Dr. Richard Hobson, discovered from FML's records that one donor had been contacted at least four times. (*Id*. at ¶ 14.) Further, research revealed that a number of donors had received more than two phone calls. (*Id*. at ¶ 15.)

In October of 2007, FML filed suit against Infocision (5:07CV3121), asserting claims for breach of contract, misrepresentation, fraud, breach of fiduciary duty, federal RICO, Ohio RICO, and nuisance. (Original Compl. ¶¶ 19-59.) On May 27, 2008,

---

[1] Citations to the FML Complaint refer to the complaint filed by FML in Case No. 5:08CV1412 (Doc. No. 1). Unless otherwise noted, all other document references are to the lead case, Case No. 5:08CV1342.

2

the Court granted Infocision's motion to dismiss in part, dismissing all but two claims: intentional misrepresentation/fraudulent inducement and breach of contract. Shortly thereafter, on June 2, 2008, FML filed a notice of voluntary dismissal without prejudice. (5:07CV3121, Doc. No. 35.)

On June 3, 2008, Infocision filed suit (5:08CV1342) against FML claiming breach of contract. (Case No. 5:08CV1342, Doc. No. 1, Infocision Compl.) FML filed suit (5:08CV1412) against Infocision on June 11, 2008, reasserting the same claims set forth in its original action. (Doc. No. 1, FML Compl.) On January 14, 2009, the Court granted Infocision's motion to dismiss Counts III through VII of FML's Complaint in their entirety, along with the corresponding counts in FML's counterclaim. (Doc. No. 24.) Following the Court's ruling, the only claim that remained in FML's Complaint was its breach of contract claim. (*See id.*)

Defendant Curtis Stern (Stern) was dismissed from FML's action on April 24, 2009 for want of service. That same day, FML filed a subsequent action against Stern. (5:09CV951.) The Complaint in this newly filed action included a claim for intentional misrepresentation. The Court consolidated FML's action against Stern with the two other pending actions on May 14, 2009. (Case No. 5:09CV941, Doc. No. 7.)

The Court conducted a Case Management Conference (CMC) on the Stern lawsuit on June 17, 2009, and a status conference for the other actions. During the conference, FML's counsel represented to the Court that the new action against Stern was not brought for purposes of delay or to secure extensions of the Court's deadlines. In light of the filing of the Stern lawsuit, as well as the fact that the parties had not completed

discovery in the other two pending lawsuits, the Court reluctantly agreed to issue a superseding Case Management Plan and Trial Order (CMPTO), which had the effect of extending all of the deadlines for all three suits. (Case No. 9:09CV941, Doc. No. 11, Superseding CMPTO). The Minutes from the conference reflect that FML was to make its Rule 26 initial disclosures to Stern by June 22, 2009. (*See* June 17, 2009 Minutes.)

The Court also warned the parties that a failure to abide by the Court's orders could result in sanctions. Following the June 17, 2009 CMC, the Court entered minutes wherein it stated, in part, that:

> The parties are hereby advised that the Court will not tolerate any further delays, and, barring extraordinary circumstances, extensions of the dates and deadlines in these cases will not be permitted. […] Going forward, counsel and the parties are warned that failure to follow the rules and procedures set forth in the Court's CMPTO and the Local Rules will result in sanctions, up to and including dismissal of any claims or defenses.

(*See* June 17, 2009 Minutes.)

The following day, June 18, 2009, counsel for Stern sent an email to FML's counsel reminding him of the initial disclosure deadline on June 22, 2009, and requesting that he bring the disclosures to the parties' previously scheduled meeting in Canton, Ohio on that date. FML's counsel responded to the email, stating that "I will be there Monday [June 22, 2009], not to make initial disclosures but to discuss dismissal of Mr. Stern. If that is not achieved I will make the disclosures shortly thereafter." (Doc. No. 66, Ex. 4, June 18, 2009 email response.)

The meeting proceeded on June 22, 2009, but FML failed to make the initial disclosures to Stern. On June 26, 2009, Stern filed the present motion to dismiss, pursuant to Fed. R. Civ. P. 37. FML offered no excuse in its response brief for its failure

4

to make the required disclosures, but rather stated that Stern had already been provided, "through testimony of both Dr. Glenn and Dr. Hobson, the names of all witnesses of [sic] individuals with discoverable information and damage calculations." (Doc. No. 69, FML Response Brief, at 2.) FML also placed in writing the names of these witnesses, and further indicated that all of the relevant documents were attached to the Complaint or in the possession of the Oho Attorney General. (*Id.* at 2-4.)

**Law and Analysis**

    *A.*    *Defendant Stern's Motion to Dismiss*

Federal Rule of Civil Procedure 37(d) provides, in relevant part, that "[i]f a party […] fails to obey an order to provide or permit discovery […] the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Examples of orders which may be just, depending on the circumstances, include: an order "striking pleadings in whole or in part, [or] staying further proceedings until the order is obeyed, [or] dismissing the action or proceeding in whole or in part, [or] rendering a default judgment against the disobedient party. […]" Fed. R. Civ. P. 37(b)(2)(A) (numerals omitted). *See Freeland v. Amigo*, 103 F.3d 1271, 1276-77 (6th Cir. 1997).

"In considering whether to dismiss an action under Rule 37(b), the court considers: (1) whether the party's failure is due to willfulness, bad faith or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Noble v. Cameron Mitchell Rests.*, LLC, 2005 U.S. Dist. LEXIS 29277, *4 (S.D. Ohio

Nov. 18, 2005) (citing *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002)). *See Whittle v. P&G,* 2008 U.S. Dist. LEXIS 75631, *8 (S.D. Ohio Sept. 26, 2008). "Although no one factor is dispositive, dismissal is proper if the record demonstrates delay or contumacious conduct."[2] *Reyes*, 307 F.3d at 459.

The Court finds FML's conduct to be willful and contumacious. During the June 17, 2009 CMC, FML's counsel agreed that he would be able to produce his client's Rule 26 initial disclosures to Stern by June 22, 2009. The very next day, June 18, 2009, FML's counsel indicated in an email that he had no intention of immediately complying with the Court's ordered discovery, and would only consider producing the discovery at a later date if the action against Stern did not settle. Inasmuch as the next day FML counsel was pursuing dismissal of the Stern action, it is clear to the Court that FML filed the Stern action for the improper purpose of extending the deadlines in the two previously filed actions. Such conduct is willful and contumacious, *see, e.g., In re LTV Steel Co., Inc.*, 307 B.R. 37, 46 (Bankr. N.D. Ohio 2004) (party's delay of several months in responding to discovery and then a representation that it would "begin preparing discovery" was willful), and warrants dismissal of the action.

The Court is also concerned by FML's counsel's breach of the duty of candor it owes to the Court. Counsel advised the Court in the CMC that he would be able

---

[2] The Court recognizes that dismissal is a "sanction of last resort," and "'should be imposed only if the court concludes that the party's failure to cooperate in discovery was willful, in bad faith, or due to its own fault.'" *Holmes v. Pipeline Dev. Co.*, 1999 U.S. App. LEXIS 2357, *6 (6th Cir. Feb. 9, 1999) (quoting *Beil v. Lakewood Eng'g and Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994)). *See Carter v. Memphis*, 636 F.2d 159, 161 (6th Cir. 1980).

to provide Stern with initial disclosures post haste. Clearly, counsel had no intention of making good on this promise. "Such conduct is not taken lightly." *Field Turf USA, Inc. v. Sports Const. Group, LLC*, 2007 U.S. Dist. LEXIS 91238, *21 (N.D. Ohio Dec. 12, 2007) (counsel breached duty of candor to the court by misrepresenting the status of an attorney). Ultimately, the Court cannot escape the conclusion that FLM has willfully disobeyed the Court's discovery order, and dismissal is, therefore, warranted. *See, e.g., Grice v. Aluminum Co. of America*, 1992 U.S. App. LEXIS 15411 (6th Cir. June 26, 1992) (dismissal of action upheld where plaintiff exhibited willful disregard for discovery orders and unnecessarily delayed the proceedings); *Holmes*, 1999 U.S. App. LEXIS 2357, at *7 (plaintiff's lack of responsiveness to the district court's orders constituted a clear pattern of delay).

With respect to the remaining factors, the Court finds that Stern has been prejudiced by FML's failure to comply with the Court's discovery order. In support of his motion to dismiss, Stern argues that he has been prejudiced because he has been severely hampered in preparing a defense in this action. He also suggests that FML's disregard for the Court's discovery order has left him unable to adequately prepare for scheduled depositions. (Mot. at 3.)

In addition, as previously discussed, FML and its counsel were certainly on notice that a failure to comply with all rules and orders could result in dismissal of the action, and also warned that the Court would not tolerate any further delay. (*See* June 17, 2009 Minutes.)

As for the final factor, the Court finds that there are no less drastic sanctions that would adequately address FML's counsel's willful and contumacious conduct. Monetary sanctions could be employed to compensate Stern for preparing the pending motion.[3] However, counsel has done more than simply fail to respond to discovery, he has misused the legal process to obtain extensions his client would otherwise not have received. Any sanction short of dismissal would understate the seriousness of his conduct. Therefore, Stern's motion to dismiss is granted.[4] In light of the Court's ruling, Stern's motion to amend his answer (Doc. No. 13) is denied as moot.

### B.     *FML's Motion to Amend the Complaint*

FML seeks to amend its Complaint to include claims for breach of fiduciary duty (disgorgement), unjust enrichment, conversion, reformation of a charitable trust, and intentional misrepresentation. (*See* Case No. 5:08-1342, Doc. No. 71, Ex. A, Proposed Am. Compl.) By its amendment, FML also wishes to join Carl Albright and Ohio Attorney General, Richard Cordray, as defendants. (*See id.*)

Rule 15(a) governs amended pleadings, and provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party;

---

[3] The Court notes that it has attempted to employ less drastic measures in the past to no avail. On April 28, 2009, the Court sanctioned FML's counsel for failing to appear at a status conference. Counsel was required to reimburse Infocision's counsel for costs associated with the conference. Obviously, this less drastic sanction did not make much of an impression.

[4] In so ruling, the Court observes that FML's belated attempt to comply with Rule 26(a) fell woefully short. While FML identified witnesses likely to have discoverable information, FML failed to provide Stern with the subjects of information that these individuals may possess. Nor did he provide a computation of each category of damages, or a copy or description of all relevant documents in FML's possession. *See* Fed. R. Civ. P. 26(a)(1)(i)-(iv).

> and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders.

In determining whether to grant a party leave to amend a pleading, the Court should consider undue delay, bad faith, undue prejudice, futility, the need for additional discovery, and the possible strain on the court's docket. *McNett v. Hardin Comty. Fed. Credit Union*, 2006 U.S. Dist. LEXIS 60144, *2 (N.D. Ohio Aug. 24, 2006) (citing *Budd Co. v. Travelers Indem. Co.*, 820 F.2d 787, 792 (6th Cir. 1987)).

As support for its motion, FML represents that leave to amend is necessary "so that FML can account for and address the issues learned during discovery." (Doc. No. 71, Mot. to Amend at 4.) In cryptic fashion, and without any supporting facts, FML maintains that information "recently learned during the taking of depositions upon oral examination and the impact of this information on [FML]'s claims" necessitates an amendment of additional claims and parties. (*Id*. at 3.)

Infocision opposes the motion, noting that FML has failed to show that its "newly discovered" information was not previously available to FML. Infocision underscores the fact that FML insists that the basis for the claims of unjust enrichment, disgorgement, and conversion "stem from the same facts forming the basis for the claims asserted in the complaint currently on file." (*Id*. at 5.) According to Infocision, the fact that these new claims arise out of the same facts suggests that these newly minted causes of action should have been brought when the original complaint was filed. Infocision urges the Court to find undue delay and futility.

The Court begins with futility. In considering a motion for leave to amend under Fed. R. Civ. P. 15(a), a district court may consider whether the plaintiff has alleged a prima facie case. If not, the plaintiff's motion is futile because leave to amend would not establish a cognizable clam. *See Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005); *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005).

Despite the Court's prior rulings that this action is one of contract (*See* Case No. 5:08CV1342, Doc. Nos. 24 and 67), FML continues to try to recast its contract claim into claims sounding in tort. Each claim will be discussed in turn.

    a.    <u>Fiduciary Duty</u>

Plaintiff's new fiduciary claim is similar to the claim raised in the original complaint and dismissed by the Court in its May 22, 2008 Memorandum Opinion and Order. Like its predecessor, the new claim alleges that defendants violated their fiduciary duty to FML by "intentionally misrepresenting their interpretations of the two recall provision in the parties' agreement." (Doc. No. 71, Ex. 1, proposed Am. Compl. ¶ 24.) Unlike the former claim, it includes two new wrinkles. Specifically, FML also alleges that defendants breached their fiduciary duty by "commencing a telemarketing campaign on behalf of Infocision in advance of filing a solicitation notice with the Attorney General." (*Id.*) FML further alleges that Infocision violated its fiduciary duty owed to FML by withdrawing funds from FML's bank account through deceptive means. (*Id.*)

Despite the new spin, this claim fails for the same reasons that the prior breach of fiduciary duty claim failed. As the Court explained in its prior decision, even assuming the existence of a fiduciary agreement, any obligations Infocision and its

principals had toward FML derived solely from the Agreement. "A tort claim based upon the same actions as those upon which a claim of contract breach will exist independently of the contract action only if the breaching party also beached a duty owed separately from that created by contract, that is, a duty owed even if no contract existed." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151 (Ohio Ct. App. 9th Dist. 1996). While FML now alleges additional conduct that constituted a breach, any obligations owed by defendants still grew out of the contract. Absent the contractual agreement, defendants would not have stood in an alleged agency relationship with FML and would have owed FML nothing. Because the proffered breach of fiduciary claim is not based upon any duty owed independent of the contract, it would fail as a matter of law. As such, it would be futile to permit FML to bring it. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss.")

      b.    <u>Conversion</u>

"In Ohio, a tort for common law conversion is one that alleges the defendants exercised dominion or control wrongfully over the property of another, in denial of or under a claim inconsistent with their rights." *DeNune v. Consol Capital of N. Am., Inc.*, 288 F. Supp. 2d 844, 854 (N.D. Ohio 2003) (citing *Ohio Tel. Equipment & Sales, Inc. v. Hadler Realty Co.*, 24 Ohio App. 3d 91, 93 (Ohio Ct. App. 10th Dist. 1985)). "Such a tort claim lies against a contracting party independent of a breach of contract claim so long as the plaintiff alleges a breach of a duty owed separately from obligations created by the contract." *Id*. FML "cannot maintain a breach of a fiduciary duty claim,

11

[and its] corresponding conversion action may not be maintained as it merely restates damages owed pursuant to the contract." *Jean v. Stanley Works*, 2006 U.S. Dist. LEXIS 50027, *14-*15 (N.D. Ohio July 5, 2006).

        c.      <u>Unjust Enrichment</u>

FML's proposed second claim sets forth allegations for unjust enrichment. However, "[t]he theory of quasi contract or unjust enrichment is not available when an express contract will afford the complaining party the same recovery." *Gehrke v. Smith*, 1993 WL 243816, *2 (Ohio Ct. App. 12th Dist. July 6, 1993) (citing *Cincinnati v. Cincinnati Reds*, 19 Ohio App. 3d 227, 231 (Ohio Ct. App. 1984). "Where there is an express contract, between the parties, none can be implied." *Klenhaus v. American Gauge Co.*, 83 Ohio App. 453, 459 (1948). Since there is a valid contract between the parties, there is no need for the legal fiction of a quasi contract. *Gehrke*, 1993 WL 243816, at *2. As such, it would be futile to allow FML to bring this new claim.

        d.      <u>Intentional Misrepresentation</u>

In the Court's July 27, 2009 Memorandum Opinion and Order, the Court held that FML's prior claim of intentional misrepresentation was insufficient, as a matter of law, because the claim failed to allege a separate duty and separate damages apart from the duty and damages flowing out of the breach of contract claim. (Doc. No. 67, Memorandum Opinion and Order at 8-13.) Even though Ohio Rev. Code § 1716.17 creates a fiduciary duty for anyone who "solicits, collects, or expends contributions on behalf of a charitable organization," the scope of that relationship and duty was still defined by the terms of the contract.

The new claim is virtually identical to its predecessor, and is based entirely upon the contractual arrangement between the parties and the competing interpretations of the "two recalls" clause. Further, the damages sought are those allegedly flowing from donor base spoliation, which FML claims resulted from Infocision's erroneous (and deceitful) reading of the contract. For all of the reasons set forth in Court's July 27, 2009, the Court finds that permitting FML to raise this claim would be futile.

### e. Reformation of a Charitable Trust

FML also attempts to recast its contract claim as a claim for the reformation of a charitable trust. In the proposed amended complaint, FML alleges that "Defendants' fundraising activities on behalf of FML manifested an intention to create a charitable trust in favor of FML." (Proposed Am. Compl.¶ 39.) FML seeks to join the Attorney General as a defendant pursuant to his duty to defend actions involving charitable trusts pursuant to Ohio Rev. Code § 109.25.

Even if Infocision's fundraising activities in FML's name could be construed as creating a charitable trust, *see Brown v. Holloway*, 1981 Ohio App. LEXIS 13615 (Ohio Ct. App. 2nd Dist. July 15, 1981), it is clear that FML has known, or should have known, of the existence of this claim since the inception of the lawsuit. FML gives no explanation for its undue delay in raising this claim. Further, the Court finds that Infocision would be unduly prejudiced by such an amendment inasmuch as Infocision has conducted discovery focused on a contract claim, and not a claim in equity. Finally, permitting FML to raise this claim at this junction would require additional discovery.

13

With the close of discovery only days away (August 31, 2009), an amendment of such a claim now would only cause further delays.[5]

The Court finds that FML has failed to meet even its minimal duty to show good cause to further amend its complaint. FML failed to identify what newly discovered evidence gave rise to the proposed claims, or why this information judge not previously available to FML. Further, all of the new tort claims cannot be maintained, as a matter of law, and, as such, it would be futile for FML to raise them. Finally, the Court notes that this case has been pending, in one form or another, for several years, and has been hampered by numerous delays. With discovery coming to a close, it would be a strain on the Court's docket to permit FML to change gears and allege claims that would require additional discovery and would jeopardize the dates in the previously amended CMPTO.

**Conclusion**

Thus, for all of the forgoing reasons, Stern's motion to dismiss (Doc. No. 66) is **GRANTED**, and FML's motion to amend its complaint (Doc. No. 71) is **DENIED**. In light of this ruling, Stern's motion to amend his answer (Doc. No. 70) is **DENIED** as moot.

**IT IS SO ORDERED**.

Dated: August 28, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[5] Likewise, FML provides no support for his request to add Carl Albright as a defendant. Specifically, FML fails to explain why Carl Albright can be held personally liable solely by virtue of his office as chief executive officer of Infocision, or why Albright was not originally included as a defendant. Additionally, permitting a new party to enter at this late would unduly delay the proceedings.