**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INFOCISION MANAGEMENT CORP. | ) ) | CASE NO. 5:08CV1342 RELATED CASE NO. 5:08CV1412 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| FOUNDATION FOR MORAL LAW INC. | ) ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of Infocision Management Corp. (Infocision) for partial summary judgment on the claimed damages of Foundation for Moral Law Inc. (FML) for breach of contract. (Doc. No. 94.) The motion is fully briefed and ripe for decision.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The factual history surrounding these related cases has been set forth in previous decisions, most recently in the Court's July 27, 2009 Memorandum Opinion, familiarity with which is presumed. For purposes of framing the issues presented by Infocision's dispositive motion, it is sufficient to note that these related cases involve the failed business relationship of Infocision and FML. Briefly, on March 31, 2004, Infocision entered into a one-year contract with FML, a charitable organization, whereby

Infocision agreed to provide telemarketing services designed to raise money to support the charitable and political work of FML. (Case No. 5:08CV1412, Doc. No. 1, FML Compl. at ¶ 11.) The Agreement was extended for an additional year on November 8, 2004, and later was revised on December 2, 2004. (*Id*. at ¶ 10.)

The contract contained a "Breakeven Agreement" regarding payment by FML for Infocision's services. (*Id*. at ¶ 11.) If (because the amount of donations received during the compilation of the donor list did not exceed the costs of performing the work) Infocision incurred a deficit on FML's account, the Breakeven Agreement provided FML with two options for paying the deficit. (*Id*.) Specifically, FML "had the option to pay the deficit, or allow Infocision to make up to two recalls per donor acquired during the next rolling 18 month period to make up the deficit." (*Id*.)

When Infocision realized a deficit, FML selected the latter payment option, and the meaning of that provision gives rise to the core dispute in this case. While Infocision believed that the Breakeven Agreement permitted it to recall previously solicited donors so long as its total number of recalls was limited to twice the total number of donors, FML insisted that the contractual provision in question limited Infocision to two recalls to any individual donor.

For purposes of the present dispositive motion, Infocision does not dispute that it called approximately 2,286 donors more than twice in an attempt to make up the deficit. Upon learning that Infocision had contacted certain donors more than two times, FML filed suit against Infocision (5:07CV3121), asserting federal and state RICO claims, as well as various contract and tort causes of action. This initial lawsuit was eventually dismissed without prejudice on June 2, 2008.

2

On June 3, 2008, Infocision filed suit (5:08CV1342) against FML alleging breach of contract. By its complaint, Infocision sought to recover approximately $422,159 in unpaid fees. (Infocision Compl. at ¶ 13.) Infocision also sought an accounting. (*Id*. at ¶ 21.) FML responded by filing its own action (5:08CV1412), raising many of the same federal and state claims it brought in its original suit. FML also filed a counterclaim in Infocision's action. (5:08CV1342, Doc. 18.) Its counterclaim was in all respects identical to the complaint in its own action. (*Id*.)

On January 14, 2009, the Court granted Infocision's motion to dismiss FML's claims in Case No. 5:08CV1412 for breach of fiduciary duty and agency relationship, federal and Ohio RICO, and nuisance, along with the corresponding counts in FML's counterclaim in Case No. 5:08CV1342. (5:08CV1412, Doc. No. 24.) On July 27, 2009, the Court granted Infocision summary judgment on FML's fraudulent inducement claim. (5:08CV1342, Doc. No. 67.)

Of FML's claims, only breach of contract survived these rulings. FML's contract claim is premised, in part, on the theory that by recalling certain donors more than twice, Infocision "spoiled [FML's] donor pool" by causing these frequently called donors to experience burnout. (FML Compl. at ¶ 22.)

Pursuant to Fed. R. Civ. P. 56(c), Infocision now seeks summary dismissal on FML's claim for damages relating to Infocision's alleged violation of the two recall provision. Infocision maintains that there is absolutely no evidence that any of FML's donors experienced donor burnout, or that FML has sustained any damages as a result of Infocision's alleged recall of certain donors on multiple occasions. Infocision also moves

the Court for summary judgment on Infocision's guaranty that FML would receive 1.8%

of the donations Infocision received from Ohio donors.

## II.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) governs summary judgment

motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. […]

Rule 56(e) specifies the materials properly submitted in connection with a

motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. […] The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating

a claim on which its opponent bears the burden of proof, so long as the movant relies

upon the absence of the essential element in the pleadings, depositions, answers to

interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this Court must view the

evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n.*, 909 F.2d 941, 943-44 (6th Cir. 1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

5

### III.

### <u>LAW AND ANALYSIS</u>

***Damages***

Infocision insists that it did not breach the parties' Breakeven Agreement when it recalled certain donors more than twice. Still, it argues that even if FML's interpretation of the contract is correct, and it did violate the Breakeven Agreement, Infocision is entitled to summary judgment on FML's claim for contract damages because FML can point to no evidence that "these donors' response rate to FML's subsequent mail solicitations was lower than that of FML's other donors, let alone that any such alleged drop-off in donations was caused by 'donor burnout.'" (Mot. at 1.)

To establish a claim of breach of contract under Ohio law, a plaintiff must demonstrate: (1) the existence of an enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages suffered by the plaintiff as a result of the breach. *Garofalo v. Chicago Title Ins. Co*., 104 Ohio App. 3d 95, 108 (Ohio Ct. App. 8th Dist. 1995); *Jarupan v. Hanna*, 173 Ohio App. 3d 284, ¶ 18 (Ohio Ct. App. 10th Dist. 2007). The existence of legally cognizable damages is, therefore, an essential element of any breach of contract action. *Firsdon v. Mid-American Nat'l Bank & Trust Co*., 1998 Ohio App. LEXIS 6028, at *6 (Ohio Ct. App. 6th Dist. Dec. 18, 1998) (citing *American Sales, Inc. v. Boffo*, 71 Ohio App. 3d 168, 174 (Ohio Ct. App. 2nd Dist. 1991)) ("Unquestionably, damages are an essential element of a breach of contract claim.") *See Doner v. Snapp*, 98 Ohio App. 3d 597, 600 (Ohio Ct. App. 2nd Dist. 1994).

A plaintiff in a breach of contract action is "entitled to those damages which 'arise naturally from the breach of the contract, or such as may reasonably be

supposed to have been in contemplation of both parties, at the time they made the contract, as the probable result of the breach […].'" *W & W Dev. Co. v. Hedrick*, 1999 Ohio App. LEXIS 1679, at *19 (Ohio Ct. App. 8th Dist. Apr. 15, 1999) (quoting *Champion Ice Mfg. & Cold Storage Co. v. Pennsylvania Ironworks Co*., 68 Ohio St. 229, 234 (1903)). *See Toledo Group v. Benton Indus.*, 87 Ohio App. 3d 798, 806 (Ohio Ct. App. 6th Dist. 1993) ("Damages for a breach of contract are those which are the natural or probable consequence of the breach of contract or damages resulting from the breach […].") As such, there must be a causal connection between the breach and the damages alleged. *Harrison Constr. Co. v. Ohio Turnpike Com*., 316 F.2d 174, 178 (6th Cir. 1963) ("[A] showing of causal connection between the breach of contract and the damages allegedly suffered is part of [the plaintiff's] prima facie case on which it sustains the burden of proof.") *See Telxon Corp. v. Smart Media of Del., Inc*., 2005 Ohio App. LEXIS 4475, at ¶ 105 (Ohio Ct. App. 9th Dist. Sept. 21, 2005) ("[T]he damages must have been directly caused by the wrongful breach, not be something else.")

Once challenged on summary judgment, a plaintiff must come forward with competent, credible evidence to create a question of fact as to the existence of damages. *Firsdon*, 1998 Ohio App. LEXIS 6028, at *7. *See Beemes v. Public Employees Retirement Sys.*, 102 Ohio App. 3d 782, 789-790 (Ohio Ct. App. 12th Dist. 1995). As to the amount of damages, it cannot be speculative or based upon conjecture. *Allied Erecting Dismantling Co. v. City of Youngstown*, 151 Ohio App. 3d 16, ¶ 64 (Ohio Ct. App. 7th Dist 2002). Still, it need not be proven with mathematical certainty; rather, the

7

amount need only be ascertainable with reasonable certainty.[1] *Starr Printing Co. v. Air Jamaica*. 45 F. Supp. 2d 625, 634 (W.D. Tenn. 1999); *Allied*, 151 Ohio App. 3d at ¶ 64; *Staffing Am. v. Titan Distribution Servs.*, 2000 Ohio App. LEXIS 4465, at *8 (Ohio Ct. App. 1st Dist. Sept. 29, 2000).

FML offers two experts on the subject of damages. David Himes did not tender an opinion as to the presence of donor burnout. Himes testified that he did not see any problems with contacting FML donors by phone more than twice in an 18-month period (Doc. No. 97, Deposition of David Himes at 35), and that there was no evidence that such activity would have been excessive. (Himes Dep. at 43.) He explained that "people who are most likely to give to you are the people who just gave to you." (*Id.* at 31.) Additionally, he testified that he was given insufficient evidence from which to make an assessment as to any spoliation in the donor base from Infocision's multiple calls to particular donors. (*Id.* at 37.)

The other expert, Stephen Levinson, also failed to offer an opinion as to the existence of donor burnout. Rather, he was asked to assume the presence of donor burnout, and then calculate damages based upon that assumption. (Doc. No. 96, Deposition of Stephen Levinson at 8.)  He testified that he made no effort to determine what the actual response rate was for Infocision donors to subsequent mail campaigns (Levinson Dep. at 29), nor was he ever provided with that information by FML. (*Id.* at 31-32.)

---

[1] The uncertainty that prevents a recovery of damages is generally uncertainty as to the existence of damages, and not the amount. *Accurate Die Casting Co. v. Cleveland*, 2 Ohio App. 3d 386, 391 (Ohio Ct. App. 8th Dist. 1981.)

In response to Infocision's motion, FML argues that Himes was never asked to consider the question of burnout. (Himes Dep. at 54.) FML also offers the affidavit of FML's Executive Director, Dr. Richard Hobson. In his affidavit, Dr. Hobson avers that the direct mail solicitations sent to donors acquired by Infocision "generally yielded significantly poorer returns than solicitations mailed to the Foundation's other donors." (Doc. No. 104, Ex. A, Affidavit of Richard Hobson at ¶ 6.) He concludes his affidavit with the observation that "I believe the donation records demonstrate that Infocision donors, subjected to excessive recalls, were less likely to give in response to mailing from the Foundation […]." (*Id.* at ¶ 10.)

Infocision insists that Hobson's affidavit fails to establish the necessary causal connection between Infocision's alleged breach of contract and the resulting damages. The Court agrees. Hobson's affidavit establishes nothing more than that a review of the donation records shows a decline in subsequent mail responses from those donors Infocision had repeatedly called as compared to other FML donors. It fails to establish that Infocision's repeated calls caused the drop-off because it does not rule out other possible causes for the decline, such as waning interest in FML's message, or that some donors are more likely to respond to phone, rather than mail, solicitations. Indeed, FML's own expert, David Himes, testified that such a record review would not demonstrate donor burnout because one would have to also take into consideration the other differences between the two groups of donors including their general willingness to respond and their capability to do so. (Himes Dep. at 24-25.)  Under these circumstances, Hobson's bald assertion cannot serve as a basis for a finding of genuine issues of material fact on this subject. *See, e.g., Dynergy Marketing & Trade v. Multiut Corp.*, 2008 U.S.

9

Dist. LEXIS 45700, at *26 (N.D. Ill. June 11, 2008) (evidence of damages insufficient to survive summary judgment where the plaintiff could not show that loss of business was not attributable to factors other than defendants' conduct.)

The Court finds the decision in *Starr Printing Co.* illustrative.[2] There, a defendant maintained that a third-party defendant's contractual breach caused the defendant to lose potential revenue. In granting summary judgment in favor of the third-party defendant, the court found that there was no "significant probative evidence" that the loss of revenue was in any way related to the identified breach. *Starr,* 45 F. Supp. 2d at 634-35. The court explained that because there were many factors that affect lost profits, "such as overhead, market, expenses, competition, and weather, no jury could find [defendant] lost profits based on the evidence of lost projected sales and lost gross profits per sale without engaging in pure speculation […]." *Id.* at 635. In so ruling, the court noted that the opinion of defendant's president that the lost profits were the result of third-party defendant's conduct, without more, was insufficient to create even a genuine issue of material fact as to causation. *See Firsdon*, 1998 Ohio App. LEXIS 6028, at *7 (bare assertion in affidavit that plaintiff would have obtained a higher price for his grain in the absence of the defendant's breach was insufficient, alone, to satisfy the causation component of damages).

---

[2]  *Starr Printing Co.* involved a breach of contract claim based on Tennessee common law. Under Tennessee law, to prevail on a breach of contract claim, a plaintiff must prove the same essential elements that are required under Ohio law. *See Life Care Ctrs. of Am. v. Charles Town Assocs. Ltd Ptnr.*, 79 F.3d 496, 514 (6th Cir. 1996).

Here, the Court has even less with which to work. Dr. Hobson does not directly state that he believes that the repeated calls placed by Infocision to certain donors caused those donors to burn out. Rather, he merely states that "I believe the donation records demonstrate that Infocision donors, subjected to excessive recalls, were less likely to give in response to mailings from the Foundation […]." (Hobson Aff. at ¶ 10.) Hobson's belief stops short of offering a causal connection, inviting the Court to connect the dots for him.

Even if Hobson had offered an opinion on causation, it still would have fallen short. FML cannot prove that a single donor failed to respond to FML's subsequent mail solicitation because Infocision contacted him or her more than twice. (Hobson Dep. at 405-406.) Hobson's unsubstantiated opinion, alone, cannot bridge the evidentiary gap and establish that the alleged drop-off in donations was the result of Infocision's overzealous phone campaign. *See Firsdon*, 1998 Ohio App. LEXIS 6028, at *7; *Starr*, 45 F. Supp. 2d 625 (company president's opinion that sales trailed off because of defendant's conduct was insufficient to withstand summary judgment where the president was unable to identify even one person who failed to purchase a vacation due to the alleged breach); *Ryan v. Editions Limited W.*, 2007 U.S. Dist. LEXIS 94507, at *25 (N.D. Ca. Dec. 27, 2007) (plaintiff's unsupported claim that her business "dropped off sharply" was insufficient to establish causation).

That Hobson's unsupported belief cannot generate issues of fact is confirmed by examining the foundation upon which the belief rests. In his deposition, Hobson admitted that his opinion had no factual support, but was based upon a feeling.

11

Q:      What about your prior experience in fund-raising made you say that, you know, two recalls and that's it? I mean, we can't go over two recalls in a given campaign no matter how long it is, because that would not be good; did somebody tell you that or—

A.      Because I am one of the people who gets phone calls at home—

Q.      Anything beyond that?

A.      --and I don't like phone calls.

Q.      Forget the recalls, you don't even like the initial call?

A.      That's correct. (Hobson Dep. at 114.)

Q.      […] Was there something in your mind about the difference between two recalls and three recalls that you thought, "Boy, two recalls is okay, but we don't want three, because that is the—that's where people turn on you?

A.      I was going by what was in the contract.

Q.      Anything else beyond that?

A.      The people don't like to get phone calls. (Hobson Dep. at 116.)

Absent any evidence that actual donors were burned out, or refused to give subsequent donations due to Infocision's actions, Hobson's personal belief that people do not like to receive phone solicitations is insufficient to establish the necessary causal connection.[3]

Upon Infocision's motion, FML was obligated to come forward with competent, credible evidence tending to show that Infocision's breach was the proximate cause of FML's damages. FML having failed to offer evidence to create a genuine issue

_____

[3] Infocision also makes much of the fact that Hobson asked Levinson to revise his expert report on several occasions to assume variations in response rates. Because Levinson's report, even as amended, cannot serve as the basis for a finding of causation, it matters not for purposes of the present motion whether Levinson's expert report is unreliable.

of material fact as to this essential element, Infocision is entitled to summary judgment on FML's request for damages from donor burnout. FML's breach of contract, however, also appears to seek the proceeds from donations generated by Infocision on three or more calls to particular donors. (FML Compl. at ¶¶ 21, 23.) To the extent FML is entitled to these donations under the contract, there is nothing in this ruling that prevents this part of FML's contract claim from going forward.

### *Guaranty*

Infocision also moves for summary judgment on Infocision's guaranty that FML would receive 1.8% of the donations Infocision received from Ohio. FML acknowledges the agreement as to Ohio donations, but also observes that it is entitled to the minimum revenue guaranteed from each state with a rider to the parties' contract. Specifically, FML represents that it "is entitled to the minimum guaranteed amount from each state where funds were solicited that has a minimum guarantee provided in the state's law." (Mem. in Opp. at 3.) Infocision agrees that FML is entitled to be credited the minimum guaranteed funds from any state having a similar law. (Doc. No. 106, Reply at 7-8.) There appearing to be no dispute between the parties, the Court rules that FML is entitled to receive the minimum guaranteed amount from each state where funds were solicited, as provided for by that state's law, to the extent that these sums are established at trial. This amount shall be applied as a set-off should Infocision prevail on its contract claim, and as a judgment should FML prevail.

## IV.

## <u>CONCLUSION</u>

For all of the reasons set forth above, Infocision's motion for partial summary judgment on FML's request for damages resulting from donor burnout is granted. FML may not seek contract damages resulting from alleged donor burnout. FML is not, however, precluded from seeking contract damages relating to unpaid proceeds from donations generated by phone calls beyond the initial two calls per donor. The Court also rules that FML is entitled to receive the minimum guaranteed amount from each state where funds were solicited, as provided for by that state's law, to the extent that FML can establish the right to recovery.

**IT IS SO ORDERED.**

Dated: March 1, 2010

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

14