UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| INFOCISION MANAGEMENT CORP., | ) | CASE NO.5:08cv1342 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| FOUNDATION FOR MORAL LAW INC., | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court are the motions in limine of Plaintiff Infocision Management Corp. (Infocision) (Doc. No. 167) and the amended motion in limine of Defendant Foundation for Moral Law Inc. (FML) (Doc. No. 169.) Both motions are fully briefed and ripe for decision.

**Factual and Procedural Background**

The facts surrounding these contract actions have been set forth in numerous Memorandum Opinions, familiarity with which is presumed. Suffice it to say, the present dispute arises out of a contractual relationship wherein Infocision agreed to provide telemarketing services designed to raise money to support the charitable and political work of FML. The focal point of the litigation was the disagreement over the interpretation of a provision in the contract that permitted FML to address any deficit in the contract by allowing Infocision to make up to "two [re]calls per donor acquired" during the next rolling 18 month period.

A brief review of the parties' interpretation of the relevant contract provision, and the actions they took based upon their respective interpretations, is necessary to place the present in limine motions in context. Infocision believed that the "two call" contract provision permitted it to make a total number of calls that was not to exceed two times the number of donors on the donor list cultivated during the initial telemarketing campaign. Relying on this interpretation, Infocision admittedly placed more than two calls each to some of FML's more generous donors, but less than 2 times the total number of donors. FML, in contrast, believed that the provision was merely a prohibition on calling any individual donor more than twice during the recall campaign. Thus, when FML learned that Infocision had placed more than two recalls to certain donors, its representative, Dr. Richard Hopson, initially instructed Infocision to stop making any further calls. He later revised FML's position, and told Infocision to simply refrain from recalling individual donors more than twice. (Doc. No. 147 at 5, Ex. A, letter dated November 15, 2005 to Rebecca Backus.) Infocision ultimately stopped all recalls "after determining that Hobson's restrictions made it impossible to generate any net revenues from further calls." (Doc. No. 145 at 4.)

On October 27, 2010, the Court issued its ruling granting Infocision's motion for summary judgment, and denying FML's motion for summary judgment. Specifically, the Court held that the term "two calls per donor acquired" established a ratio to be used in determining the maximum number of calls Infocision could make during the second campaign. In so ruling, the Court rejected FML's interpretation that Infocision was not permitted to make more than two calls to each individual donor. The Court concluded that its ruling resolved the question of whether Infocision breached the agreement by recalling certain donors more than twice, and whether FML was entitled to

2

instruct Infocision to stop making recalls. Both issues were resolved in favor of Infocision. In light of this ruling, the Court dismissed FML's case (Case No. 5:08CV1412), and set Infocision's case (Case No. 5:08CV1342) for trial.

Several issues, including the determination of damages, Infocision's right to an accounting, and the proper disposition of the $14,644.79 that was held in the parties' joint back account, remained for trial. Notwithstanding the existence of these remaining issues, FML filed a notice of appeal from the Court's ruling on summary judgment. In light of the notice, the Court was forced to abandon the November 8, 2010 trial date.

Infocision's case was returned to this docket on January 20, 2011 when the Sixth Circuit granted Infocision's motion to dismiss the appeal as to Infocision's case, and held the appeal from the dismissal of FML's case in abeyance until after the trial on damages in the Infocision case. (*See* Doc. No. 164.)

The Court is now, once again, on the eve of trial, and the parties have filed motions in limine.

**Law and Analysis**

    **A.**    <u>**Motion in Limine Standard**</u>

Although not explicitly authorized by the Federal Rules of Evidence or the Federal Rules of Civil Procedure, the practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir.

1997).

Courts should exclude evidence on a motion in limine only when it is clearly inadmissible. *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). If the court is unable to determine whether or not certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context. *Id*. Ultimately, the determination whether to grant or deny a motion in limine is within the sound discretion of the trial court. *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008) (citing *United States v. Certain Lands Situated in the City of Detroit*, 547 F. Supp. 680, 681 (E.D. Mich. 1982)). In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

All relevant evidence is admissible and evidence that is not relevant is not admissible. Fed. R. Evid. 402. "Relevant evidence" is defined as "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The relevancy standard is liberal. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993). However, relevant evidence may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the evidence." Fed. R. Evid. 403.

**B.     The Motions in Limine**

*i)     Infocision's Motions in Limine (Doc. No. 167.)*

By its motion, Infocision seeks to prevent FML from introducing evidence: (1) involving statements made regarding the interpretation of the contract; (2) regarding an unsuccessful attempt by an Infocision employee to withdraw the funds from the parties' joint bank account; and (3) regarding Infocision's settlement offers. The Court will address each category of evidence in turn.

Infocision argues that FML should be precluded from mentioning any statements allegedly made by Infocision's former employee, Curtis Stern (or any other Infocision employee), as to the meaning of the contractual language limiting the number of recalls. In support of its position, Infocision notes that the Court has already resolved the issue of the interpretation of this contract provision, and, as such, any further testimony on this subject would be irrelevant and prejudicial.

FML posits that the question of why Infocision ceased to make any calls will undoubtedly give rise to testimony regarding the parties' respective interpretations of the "two call" provision. It insists that it would be unfair and prejudicial to permit Infocision to explain that it did not make all of the required calls, and then prohibit FML from explaining why it gave instructions to Infocision concerning the recall question. According to FML, the fact that the Court has now ruled on the interpretation of the "two call" provision should not prohibit FML from presenting evidence of its contemporaneous understanding of the contract provision.

Liability has been determined in this matter. The Court had already ruled that the contract was unambiguous, and that FML's interpretation was unreasonable. The

5

only questions left for trial relate to the damages to which Infocision is entitled. At this point, the question of why FML instructed Infocision to stop making calls is not relevant. With respect to the parties' communications, the only question left is whether it was reasonable for Infocision to discontinue making all calls when FML ultimately gave it permission to continue making calls to certain donors. What motivated FML to so instruct Infocision is simply not relevant to the question of damages.[1] As such, this portion of Infocision's motion in limine is GRANTED.

Infocision also seeks to prohibit FML from offering any evidence of an unauthorized attempt by an Infocision employee to withdraw the funds held in the parties' joint bank account. It is undisputed that the attempt was unsuccessful. In an order ruling on motions in limine filed prior to the aborted November 2010 trial, the Court ruled that such evidence was not relevant because it did not make it any more or less probable that Infocision was entitled to the funds in question. (Doc. No. 136 at 4.) Finding that the only conceivable purpose for offering this evidence would be to cast Infocision in an unfavorable light, showing that its employees act with improper or fraudulent motives, the Court ruled that its admission would be unduly prejudicial under Rule 403 of the Federal Rules of Evidence. (*Id*.)

FML now asks the Court to revisit that ruling, arguing that such evidence would be admissible to demonstrate habit or routine practice of an organization. Without support, FML argues that "Infocision's internal procedures were configured to enable them to act unilaterally in the event a client refused to release the funds upon request." (Doc. No. 173 at 4.) It offers its "contention" that this was not the first time that

---

[1] FML also argues that this evidence would be admissible to demonstrate FML's good faith defense to the breach of contract. "Good faith" is an affirmative defense which was never pled nor litigated by FML. As such, it is waived.

6

Infocision had acted in this manner, and that FML should be permitted to bring this out at trial.

Federal Rule of Evidence 406[2] provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

Fed. R. Evid. 406.

According to the Notes to Rule 406, "habit" refers to "one's regular response to repeated specific situation." When "habit" refers to a group, it references the "routine practice of an organization." Courts have generally proceeded cautiously in "permitting the admission of a pattern of conduct as habit, because it necessarily engenders the very possibility that such evidence will be used to establish a party's propensity to act in conformity with its general character, thereby thwarting Rule 404's prohibition against the use of character evidence except for narrowly prescribed purposes." *Simplex, Inc. v. Diversified Energy Systems, Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988) (citing *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494 (4th Cir. 1977)).

Given the concern that such evidence will amount to improper Rule 404 other acts evidence, "before a court may admit evidence of habit, the offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc.*, 847 F.2d at 1293 (citing Fed. R. Evid. 406 (Notes of Advisory Committee)). This requires a showing that "the behavior at issue occurred with

---

[2] FML erroneously cites Fed. R. Evid. 407, which relates to the admissibility of subsequent remedial measures, instead of Rule 406.

sufficient regularity making it more probable than not that it would be carried out in every instance or in most instances." *United States v. Newman*, 982 F.2d 665, 668 (1st Cir. 1992) (internal citations omitted). *See Bell v. CONRAIL*, 299 F. Supp. 2d 795, 800-801 (N.D. Ohio 2004) (disallowing Rule 406 habit evidence where evidence from employees failed to show that it was not uncommon or unusual for defrosters on trains to be non-functioning). As such, admissible Rule 406 evidence must "rest on an analysis of instances 'numerous enough to [support] an inference of systematic conduct' and to establish one's regular response to a repeated specific situation." *Newman*, 982 F.2d at 668 (internal citation omitted); s*ee Osborne v. Pinsonneault*, 2009 U.S. Dist. LEXIS 33957, at *8 (W.D. Ky. Apr. 20, 2009) (citing *Bell*, 299 F. Supp. 2d at 800)). Such an analysis "may require 'some comparison of the number of instances in which any such conduct occurs with the number in which no such conduct took place.'" *Bell*, 299 F. Supp. 2d at 800 (quoting *Strauss v. Douglas Aircraft Co*., 404 F.2d 1158 (2d Cir. 1968)); *see also Weil v. Seltzer*, 873 F.2d 1453, 1460-61 (D.C. Cir. 1985) (burden of establishing the habitual nature of the evidence rests with the proponent); Fed. R. Evid. 406 (Advisory Committee's Note: In deciding whether conduct amounts to "habit" significant factors include the "adequacy of sampling and uniformity of responses.")

     Here, FML offers no evidence, beyond its unsupported "contention," that the isolated act of Infocision's employee amounted to a routine practice such that it represented Infocision's "regular response to a repeated specific situation." Consequently, such evidence is the type of character evidence contemplated under Rule 404(b), and is not admissible to show habit. *See, e.g., Weil*, 873 F.2d at 1460-61 (evidence relating to the treatment of five former patients did not establish the existence of a habit). Of course, even if FML would have met its burden of establishing the

8

existence of a habit, evidence that Infocision had a habit of having its employees withdraw contested monies would not be relevant to the question of who is entitled to the money in the parties' joint account. Infocision's motion to exclude such evidence is GRANTED.

Finally, Infocision argues that FML should not be permitted to mention anything about Infocision's settlement offers. While FML acknowledges that Fed. R. Evid. 408(a) prohibits the use of evidence of offers to compromise a claim, and further concedes that compromises need not be limited to those made after a lawsuit is filed, it maintains, without support, that Rule 408 does not include "statements made before a dispute has heated up and the possibility of a lawsuit is looming." (Doc. No. 173.) According to FML, Infocision's Rebecca Backus's August 28, 2006 email to Richard Hobson, suggesting that the existing balance should be excused in exchange for the balance of the parties' joint bank account, is admissible because it came almost two years before Infocision filed suit.[3]

Rule 408 prohibits the admission of statements made for the purpose of: [1] "furnishing […]—or accepting […]—a valuable consideration in compromising or attempting to compromise the claim; and [2] conduct or statements made in compromise negotiations regarding the claim […]." Fed. R. Evid. 408(a). While subsection (a) prohibits the admission of such evidence for the purposes of establishing liability or the quantum of damages, subsection (b) permits such evidence to be admitted for other purposes. *See id.* FML argues that there was no claim as contemplated by Rule 408(a),

---

[3] FML also seeks to introduce evidence that on January 30, 3007, Forrest Thompson of Infocision allegedly indicated that he did not care about the escrow account so long as the state did not get the money, and that, on February 9, 2007, Ken Dawson and Rebecca Backus informed FML that Infocision had decided to forgive the alleged deficit and that FML could also have the monies held in the parties' joint bank account.

9

and submits that it should be permitted to offer evidence that Infocision was willing in 2006 and early 2007 to walk away from the deficit to demonstrate that it had already determined that it would not vigorously pursue its recall campaign as another purpose under Rule 408(b).

For Rule 408's prohibition to apply, "there must be an actual dispute, or at least an apparent difference of opinion between the parties, as to the validity of a claim." *Dallis v. Aetna Life Ins. Co.*, 768 F.2d 1303, 1307 (11th Cir. 1985). "It is clear that litigation need not have actually commenced for Rule 408 to apply." *Alpex Computer Corp. v. Nintendo Co.*, 770 F. Supp. 161, 164 (S.D.N.Y. 1991) (construing *Big O Tire Dealers v. Goodyear Tire & Rubber Co.*, 561 F.2d 1364 (10th Cir. 1977)). The term "claim," as set forth in Rule 408, contemplates "legal claims for or against liability of the parties." *Nat'l Presort v. Bowe Bell + Howell Co.*, 663 F. Supp. 2d 505, 508 n.4 (N.D. Tex. 2009) (statements in letters sent prior to litigation were not admissible to prove liability for or the amount of the claim).

Courts have observed that:

> The "trigger" for application of Rule 408, the existence of an actual dispute as to existing claims, appears to be whether the parties have rejected each other's claims for performance, or, to put it another way, whether the parties have reached a clear difference of opinion as to what performance is required.

*Johnson v. Land O'Lakes*, 181 F.R.D. 388, 392 (N.D. Iowa 1998).

The evidence offered by FML in support of its own motion in limine demonstrates quite clearly that there was an actual dispute as to an existing claim, as well as a clear difference of opinion as to what performance was required under the contract when various Infocision employees, in 2006 and 2007, made offers to FML that were designed to resolve all issues between the two parties. In a November 29, 2005 email to

10

Rich Hobson, Rebecca Backus advised Hobson that "we have suspended the recalls per your request until we can sort through the questions you had on the contract." That same morning, November 29, 2005, Rich Hobson responded in an email that "Infocision may still make up to 2 recalls to each donor, but we do not believe the contract allows for more than 2 to any donor. We ask that Infocision refrain from making more than 2 recalls. (*See* Doc. No. 169 at 6.) Because there was an actual dispute when Infocision employees made the offers of resolution, they cannot be offered to refute FML's liability or to establish the value of the claim.

Nor can this evidence be offered for some other purpose under Rule 408(b). To the extent that FML wishes to offer such evidence as proof of Infocision's failure to mitigate its damages, the Sixth Circuit has previously ruled that evidence of failure to mitigate is not admissible as serving "another purpose" under Rule 408. *See Stockman v. Oakcrest Dental Ctr.*, 480 F.3d 791, 797-98 (6th Cir. 2007) (quoting *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 826-27 (2d Cir. 1992) ("[e]vidence that demonstrates a failure to mitigate goes to the 'amount' of the claim and thus, if the offer was made in the course of compromise negotiations, it is barred under the plain language of Rule 408."))

For all of the reasons set forth above, Infocision's motion in limine is GRANTED in full.

   *ii)*  *FML's Motion in Limine*

By its motion, FML seeks to preclude Infocision from offering any evidence as to damages because: (1) Infocision has failed to furnish evidence of damages during discovery; (2) FML permitted Infocision to recall donors; (3) FML did not breach

11

the contract; (4) Infocision failed to mitigate damages; and (5) Infocision breached the contract.

As to its first contention, FML complains that Infocision failed to respond to repeated requests for evidence of damages included in interrogatories, requests for production of documents, and various letters and emails. Local Rule 37.1 outlines the procedure for handling discovery disputes, and requires the parties to refer any discovery dispute to a Judicial Officer only after counsel have certified to the Court the making of a sincere, good faith effort to resolve the dispute. Local Rule 37.1(a)(1). The rule further provides that no discovery dispute shall be brought to the attention of the Court more than 10 days after the discovery cut-off deadline. L.R. 37.1(b). The discovery deadline in this case was August 31, 2009 (*see* Doc. No. 65), yet this is the first time that FML has raised this particular complaint regarding discovery. Moreover, in its second status report, filed September 22, 2009, FML reported that the parties had completed fact discovery. (*See* Doc. No. 88.) No mention of any discovery dispute was made. Having failed to bring this discovery dispute to the Court's attention in a timely fashion in accordance with the local rules, FML cannot now complain that Infocision failed to comply with discovery requests. This portion of FML's motion in limine is DENIED.

FML also argues that it is not responsible for any alleged deficit because FML "chose to allow Infocision to recall donors." (Doc. No. 169 at 4.) But it is undisputed that FML instructed Infocision to stop recalling donors more than twice, contrary to the terms of the Breakeven Agreement. FML now suggests, however, that Dr. Hobson merely aired his concerns regarding the potential for burning out the donor pool, and that Hobson did nothing more than suggest a possible course of conduct. Of course, FML has alleged from the beginning that "Dr. Hobson [] told Infocision by telephone and

in subsequent letters to cease recalling any donor more than twice." (Case No. 5:08CV1412, Compl. at ¶ 16.) Ultimately, whether Infocision should have ceased all recall efforts in response to the limitations Dr. Hobson placed on the recall campaign is a question properly left for the jury.

In a related vein, FML argues that Infocision should be precluded from offering any evidence of damages because Infocision failed to mitigate its damages. Specifically, FML points to the fact that, in response to FML's concerns regarding the calling of individual donors more than twice, Infocision made the unilateral decision to cease all calls. Under Ohio law, "an injured party is under a duty to mitigate its damages and may not recover those damages which it could have reasonably avoided." *Wilson v. Kreusch*, 111 Ohio App. 3d 47, 52 (Ohio Ct. App. 2d Dist. 1996). While a failure to mitigate is an affirmative defense which limits the amount of damages a plaintiff can recover, it is not a defense to liability. *A.B. & B, Inc. v. Banfi Products, Inc.,* 71 Ohio App. 3d 650 (Ohio Ct. App. 1991). Further, the failure to mitigate damages only reduces the amount recoverable; it does not bar recovery. *Van Beusecum v. Continental Builders,* 2008 Ohio App. LEXIS 1837, at *27 (Ohio Ct. App. 5th Dist. May 1, 2008) (citing *A.B. & B*, 71 Ohio App. 3d at 657. When the plaintiff failures to mitigate, the plaintiff is only precluded from recovering damages that could have been avoided by mitigation. *Id*. As such, Infocision's failure to mitigate, should FML establish it at trial, will go to the amount of damages; and not, its entitlement to them. To the extent FML's motion seeks to bar damages evidence on grounds of failure to mitigate it is DENIED.

Infocision argues, however, that FML should be precluded from raising the issue of mitigation because it failed to raise the defense in a responsive pleading. There is no question that FML failed to raise this affirmative defense in any responsive

13

pleading. Further, Fed. R. Civ. P. 8(c) provides that all affirmative defenses, except those specifically set forth in Fed. R. Civ. P. 12, must be set forth in an answer or some other responsive pleading.[4] Nonetheless, the failure to raise an affirmative defense does not always result in a waiver of that defense. The United States Supreme Court has held that such a defense may be litigated so long as the party against whom the defense received notice and had an opportunity to rebut it. *Blonder-Tongue Labs., Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971); s*ee Moore, Owen, Thomas & Coffey*, 992 F.2d 1439, 1455 (6th Cir. 1993); *see, e.g., R.H. Cochran & Assoc. v. Sheet Metal Workers Int'l Ass'n*, 335 Fed. Appx. 516, 519 (6th Cir. 2009) (affirmative defense not waived where raised in summary judgment); *Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003) (same).

The Court finds that FML has sufficiently raised the issue of mitigation in various pleadings, motions and responsive briefs such that Infocision was put on notice that this was an affirmative defense that FML intended to pursue at trial. Specifically, FML has made repeated reference to the fact that Rich Hobson ultimately indicated to Infocision that it was permitted to make some call (i.e. up two additional calls to each individual donor), and that Infocision made a unilateral decision to cease making any calls. These allegations sufficiently placed Infocision on notice that FML believed that Infocision failed to mitigate its damages by making calls to certain donors. *See, e.g., Moore*, 992 F.2d 1445 (affirmative defense not waived where raised during summary

---

[4] The same is true under Ohio law. Ohio R. Civ. P. 8(C) requires a party to "set forth affirmatively […] any […] matter constituting an avoidance or affirmative defense." "The failure to raise an affirmative waives that defense." *Oliver v. C.M.H.A.*, 2002 Ohio App. LEXIS 5663, at ¶ 11 (Ohio Ct. App. 8th Dist. Oct. 24, 2002). Under Ohio law, the failure to mitigate damages is an affirmative defense. *Young v. Frank's Nursery & Crafts, Inc.*, 58 Ohio St.3d 242, 244 (1991).

judgment.) The Court, therefore, concludes that the affirmative defense of mitigation has not been waived.

Finally, FML argues that its own lack of breach, combined with Infocision's breach of the agreement, should preclude Infocision from offering any evidence of damages. Specifically, FML maintains that it did not breach the contract because Rich Hobson merely expressed his concerns regarding donor burnout, and encouraged Infocision to continue making up to two calls to each donor. It notes that FML had no authority to stop Infocision from making any calls authorized by the contract, and that Infocision had a duty to honor the contract "notwithstanding Dr. Hobson's concerns." (Doc. No. 169 at 4.) It further argues that Infocision breached its duty under the Breakeven Agreement when it unilaterally decided to cease making all calls. (*Id.* at 5.)

The Court rejects this argument for several reasons. First and foremost, this argument is not properly raised in an in limine motion. As set forth above, the purpose of the in limine motion is to "ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Indiana Ins. Co.*, 326 F. Supp. 2d at 846; s*ee Harris v. City of Circleville*, 2010 U.S. Dist. LEXIS 29386, at *6 (S.D. Ohio Mar. 5, 2010) (citing *Jonasson*, 115 F.3d at 440) ("The purpose of a motion in limine is to allow the court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial.")) While couched in terms of an evidentiary issue, FML's motion truly represents an attempt to relitigate the issue of liability. Liability has been determined and the deadline for filing dispositive motions has long since passed. Thus, FML's untimely attempt to pass off a dispositive motion as one in limine shall not be tolerated.

Second, even if the Court were inclined to revisit the issue liability, FML's arguments represent a new theory that was neither plead nor litigated. Throughout this litigation, FML has argued that Infocision breached the agreement by calling certain individual donors more than twice; thereby, burning out the donor pool. (*See* Case No. 5:08CV1412, Doc. No. 1, FML Compl. at ¶ 20, "By placing recalls to Plaintiff's donors three (3), four (4), and five (5) times in an eighteen (18) month period, Infocision materially breached the two-recall provision of the contract between Plaintiff and Infocision;" Case No. 5:08CV1342, Doc. No. 18, Answer at ¶ 6, incorporating all allegations of FML's Complaint in Case No. 5:08CV1412; Case No. 5:08CV1342, Doc. No. 147, FML's motion for summary judgment, noting that FML moves for judgment "by reason of Infocision's breach of the two recall provision" at 1, and fn. 2 noting that Infocision was limited to making no more than two additional calls to each individual donor).

Now, on the eve of trial, FML attempts to argue that Infocision owed a duty under the contract to disregard FML"s "concerns" and continue to make any and all calls under the contract.[5] This was never FML's theory, either in pleading or in litigation, and it would be inappropriate to permit FML to raise it at this late juncture where there has been no notice and no opportunity for Infocision to respond.[6]

---

[5] The Court is not persuaded by FML's attempt to suggest that FML never instructed Infocision to, in any way, curtail its recall efforts. In its complaint in its own breach of contract case, FML alleged that "Dr. Hobson also told Infocision by telephone and in subsequent letters to cease recalling any donor more than twice." (*See* Case No. 5:08CV1412, Compl. at ¶ 16.)

[6] To the extent that this "theory" represents merely a restatement of its argument that Infocision failed to mitigate its damages by at least making two additional calls to each donor, the Court has already ruled that it will permit FML to offer evidence in support of this affirmative defense at trial.

For all of the foregoing reasons, FML's motion in limine is DENIED.

**IT IS SO ORDERED**.

Dated: July 22, 2011

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**