# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| INFOCISION MANAGEMENT CORP., | ) | CASE NO. 5:08CV1342 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | |
| FOUNDATION FOR MORAL LAW, | ) | **MEMORANDUM OPINION** |
| INC., | ) | **AND ORDER** |
| | ) | |
| DEFENDANT. | ) | |
| | ) | |

Before the Court are Plaintiff's motion for prejudgment interest under Ohio Rev. Code § 1343.03(A) (Doc. No. 202) and Defendant's motion for stay pending appeal (Doc. No. 205). For the reasons discussed below, Doc. No. 202 is **GRANTED** and Doc. No. 205 is **DENIED**.[1]

### A. Plaintiff's Motion for Prejudgment Interest (Doc. No. 202)[2]

On August 30, 2011, this Court entered final judgment in favor of Plaintiff against Defendant in the amount of $345,991.89. Plaintiff now seeks prejudgment interest on that judgment pursuant to Ohio Rev. Code § 1343.03(A), which provides, in pertinent part:

> In cases other than those provided for in sections 1343.01 and 1343.02 of the Revised Code, when money becomes due and payable [...] upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out

---

[1] On December 11, 2009, the Court issued an order (Doc. No. 98) granting defendant Curtis Stern's motion under 28 U.S.C. § 1927 and the Court's inherent power to recover costs, expenses, and attorney's fees from Percy Squire, counsel for Foundation for Moral Law, Inc. (FML), relating to Case No. 5:09CV951. Stern's motion for attorney's fees and costs (Doc. No. 194) is currently pending and fully briefed. Although the Order of December 11, 2009, was originally appealed (*see* Doc. No. 103), that appeal was subsequently voluntarily dismissed (*see* Doc. No. 111). Therefore, since Stern's motion has no delaying impact on the pending consolidated appeals (Nos. 10-4408, 11-4078) (*see* Doc. No. 209, noting that appeals will be held in abeyance), the Court need not decide it herein. Rather, the Court will issue a separate order addressing that motion.

[2] Defendant filed an opposition to the motion (Doc. No. 203); plaintiff filed a reply (Doc. No. 206); and defendant filed a supplement to its opposition (Doc. No. 215).

of [...] a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract. [...]

Ohio Rev. Code § 5703.47 provides that the tax commissioner shall annually "determine the federal short-term rate" and that "[f]or purposes of any section of the Revised Code requiring interest to be computed at the rate per annum required by this section, the rate determined by the commissioner under this section, rounded to the nearest whole number per cent, plus three per cent, shall be the interest rate per annum used in making the computation for interest that accrues during the following calendar year."

Plaintiff asserts that the breach of contract upon which it obtained a judgment occurred on November 1, 2005. Therefore, it asserts entitlement to prejudgment interest from November 1, 2005 to August 30, 2011 at the rates set pursuant to § 5703.47. Plaintiff's interest calculations, amounting to $119,326.94, are shown in an attachment to its motion.

In opposition, Defendant argues: (1) that Plaintiff, by virtue of statements made by counsel during closing arguments at the trial of this matter, waived any claim to interest; (2) that Plaintiff "has provided no evidence whatsoever to support the federal short term interest rate" and "merely alleges that the rates listed are from the Ohio Department of Taxation[;]" and (3) that Plaintiff has failed to support with evidence its assertion that interest, if any, started to run on November 1, 2005.

Defendant's first argument has no merit. During closing at the trial, Defendant's counsel argued as follows:

> [MR. SQUIRE]: You heard testimony that basically said under the Breakeven Agreement, the proceeds from the re-call invoices will be paid first, then the proceeds from the prospecting campaign. What difference does that make?

of [...] a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract. [...]

Ohio Rev. Code § 5703.47 provides that the tax commissioner shall annually "determine the federal short-term rate" and that "[f]or purposes of any section of the Revised Code requiring interest to be computed at the rate per annum required by this section, the rate determined by the commissioner under this section, rounded to the nearest whole number per cent, plus three per cent, shall be the interest rate per annum used in making the computation for interest that accrues during the following calendar year."

Plaintiff asserts that the breach of contract upon which it obtained a judgment occurred on November 1, 2005. Therefore, it asserts entitlement to prejudgment interest from November 1, 2005 to August 30, 2011 at the rates set pursuant to § 5703.47. Plaintiff's interest calculations, amounting to $119,326.94, are shown in an attachment to its motion.

In opposition, Defendant argues: (1) that Plaintiff, by virtue of statements made by counsel during closing arguments at the trial of this matter, waived any claim to interest; (2) that Plaintiff "has provided no evidence whatsoever to support the federal short term interest rate" and "merely alleges that the rates listed are from the Ohio Department of Taxation[;]" and (3) that Plaintiff has failed to support with evidence its assertion that interest, if any, started to run on November 1, 2005.

Defendant's first argument has no merit. During closing at the trial, Defendant's counsel argued as follows:

> [MR. SQUIRE]: You heard testimony that basically said under the Breakeven Agreement, the proceeds from the re-call invoices will be paid first, then the proceeds from the prospecting campaign. What difference does that make?

> You've been told the re-call program is less expensive than the prospecting program.
>
> That means the invoices from prospecting are going to be larger than your invoices from the re-call program.
>
> Now, if when the money comes in from the re-call program, you pay off the re-call invoices first, those smaller invoices are eliminated. These larger invoices, which will be older, will be charged interest according to what you see here. All invoices are billed at the conclusion of each week and are due in 14 days.
>
> It's critical that invoices be paid timely. Any invoices outstanding 30 days will accrue a 1½ [percent] interest charge and an additional 1½ percent charge will accrue each 30-day period any invoice remains outstanding.
>
> So what that means is those old large invoices that are left outstanding will accrue greater interest, as long as they're outstanding, and cost the Foundation more than -- the more recent invoices. So Infocision conducts a re-call program. They pay off the re-call invoices, which are newer and smaller and don't accrue as much interest. Then they turn around and they charge this greater amount of interest to the Foundation.

(Trial Trans. at 464-65 [Doc. No. 213].) Plaintiff's counsel responded in his closing as follows:

> [MR. BERTSCH]: But I'm going to respond now to the other argument I heard in closing, which is interest. "They deliberately applied the money to the oldest invoices first so that would earn them more interest."
>
> No. It was the other way. If I am applying to the oldest invoice first, the new ones haven't even begun to accrue interest. The oldest invoices are the ones that are accruing interest, and interest was being charged.
>
> And I heard this for the first time in closing argument. Interest charges, folks, if there were interest charges, this 422,000 that's been out there since 2005 would be over a million dollars. *We haven't assessed them any interest on that amount.*
>
> But clearly, if we really wanted to make the money and inflate this, we would pay off the most recent invoices first and let those old ones gather more interest like a credit card company.
>
> Think about it a moment, though. It doesn't -- there's nothing to be gained by us for doing it that way. We're taking the oldest ones first. If anything, if we were charging interest, you would benefit that way. But we haven't been charging interest. This figure has been sitting out there for the last five years. There's not been interest charges assessed against it.

(*Id.* at 475-76, emphasis added.) The Court finds that this exchange during closing arguments did not constitute a waiver by Plaintiff of interest due on any *verdict* the jury might award and/or a *judgment* issued by the Court. In fact, it would have been improper for Plaintiff to ask the jury to award any interest, as that is solely a question for the Court.

Defendant's second argument equally lacks merit. The rate of prejudgment interest is a statutory matter. Further, the Court itself has confirmed, by making reference to the Ohio Department of Taxation's official website,[3] that the rates of interest contained in the chart attached to Plaintiff's motion are the correct rates for each of the years from 2005 to, and including, 2011. The Court can take judicial notice of this information that is reported on the Department of Taxation's official website. *See, e.g.*, *Marshek v. Eichenlaub*, 266 F. App'x 392 (6th Cir. 2008) (taking judicial notice of the Bureau of Prisons' official website for purposes of determining that an inmate had already been transferred to a Community Corrections Center, which was the very relief sought in his habeas petition, rendering the petition and the appeal moot); *see also* Fed. R. Evid. 201 (court may take judicial notice of a fact "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" and may do so "whether requested or not"); *Denius v. Dunlap*, 330 F.3d 919 (7th Cir. 2003) (finding it was an abuse of discretion for the district court to withdraw its initial judicial notice of information on the National Personnel Record Center's official website because it met the requirements of Rule 201); *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003) ("Courts have defined a public record to include published reports of administrative bodies. [...] The fact that an agency report is 'published' on the world wide web

---

[3] *See* http://tax.ohio.gov/divisions/ohio_individual/individual/interest_rates.stm, charts and journal entries thereon. (Last visited 11/18/11.)

4

does not affect the Court's ability to take judicial notice of the contents of that report."); *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir. 2004) (taking judicial notice of statistics on the Virginia Division of Legislative Services' official website).

As for Defendant's third argument, attacking the date when any prejudgment interest would begin to run, "while the right to prejudgment interest in a contract claim is a matter of law, the amount awarded is based on the court's factual determination of an accrual date." *Norco Equip. Co. v. Simtrex, Inc.*, No. 95914, 2011 WL 3211102, at *2 (Ohio Ct. App. July 28, 2011). "The award of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment, regardless of whether the judgment is based on a claim which was liquidated or unliquidated and even if the sum due was not capable of ascertainment until determined by the court." *Royal Elect. Constr. Corp. v. Ohio State Univ.*, 73 Ohio St. 3d 110, 110-11 (1995), Syllabus. This Court has previously held that Defendant's breach of contract occurred in October 2005, when, based on its misinterpretation of the re-call provision in the contract, it instructed Plaintiff to stop making re-calls. Therefore, the Court finds that November 1, 2005 is the appropriate accrual date.

In light of the above discussion, the Court concludes that Plaintiff is entitled to an award of pre-judgment interest on the judgment. Defendant has offered no challenge to Plaintiff's computation of interest in the chart attached to the motion. The Court has independently reviewed the chart and the computations and finds the figures to be correct.

Accordingly, Doc. No. 202 is **GRANTED**. Prejudgment interest in the amount of $119,326.94 is awarded with respect to the judgment of $345,991.89. The Court will enter a separate Judgment Entry to that effect.

**B.      Defendant's Motion to Stay Pending Appeal (Doc. No. 205)**[4]

Defendant seeks a stay of the judgment in favor of Plaintiff "pending [Defendant's] appeal to the United States Court of Appeals for the Sixth Circuit in this case and the related case currently pending before the appeals court, No. 5:08-CV-1412." (Motion, at 1.) Defendant wants the stay to be without the posting of any bond.

Fed. R. Civ. P. 62(d) provides for the granting of a stay pending appeal if the appellant files a supersedeas bond. The Sixth Circuit has held, however, that Rule 62 "in no way necessarily implies that filing a bond is the only way to obtain a stay." *Arban v. West Pub. Corp.*, 345 F.3d 390, 409 (6th Cir. 2003). Granting a stay is also within the province of the court's discretion. *Id*.

Defendant has posted no bond and moves for a stay pending appeal in reliance on *Countrywide Home Loans, Inc. v. McDermott*, No. 5:09MC82, 2009 WL 3259131, at *2 (N.D. Ohio Oct. 7, 2009) and *Capital One Bank (USA) N.A. v. Jones*, 710 F. Supp. 2d 634 (N.D. Ohio 2010). However, neither *Countrywide* nor *Capital One* involved staying a judgment with a specific dollar value, where a bond serves to shift the risk to an appellant, often the party against whom the money judgment is directed.

This Court instead finds guidance in *Verhoff v. Time Warner Cable, Inc.*, No. 3:05CV7277, 2007 WL 4303743, at *2 (N.D. Ohio Dec. 10, 2007), where the court concluded that whether to grant a stay pending appeal without posting a bond depends on several factors: (1) the protection offered by the bond to the prevailing party below; (2) whether posting the bond would pose an undue financial burden on the appellant; (3) the risk that appellee's interests may

---

[4] Plaintiff filed an opposition to the motion (Doc. No. 207) and defendant filed a reply, styled as a "response" to the opposition (Doc. No. 210).

6

be irreparably harmed; and (4) the burden on the appellee to enforce the judgment in a foreign jurisdiction. *Accord*, *Johnson v. Connecticut Gen. Life Ins. Co.*, No. 5:07-cv-167, 2008 WL 918459, at *1 (N.D. Ohio Apr. 1, 2008) (courts generally hold a full supersedeas bond should be required "and should only be excused where the appellant has demonstrated the existence of extraordinary circumstances.") (citation omitted).

Here, Defendant is a small charity organization which "has minimal reserves and employs only three full-time employees and one part-time employee." (Reply, Doc. No. 210 at 1.) It argues that requiring a bond in order to stay the execution of the judgment would encumber its ability to maintain its mission and to properly prepare its appeal. This argument goes toward the second factor listed above. However, those same facts, taken as true for purposes of this motion, tend to establish that a stay without a bond should not be granted in light of the other three factors. Precisely because Defendant "has minimal reserves," Plaintiff (i.e., the prevailing party) needs protection from the possibility that, while the appeal is pending, Defendant's financial resources become even more diminished or, for that matter, non-existent. A bond would tend to protect Plaintiff's interests and guard against the irreparable harm that would result should Defendant become unable, following an unsuccessful appeal, to pay the judgment.

Accordingly, the Court **DENIES** Defendant's motion (Doc. No. 205) for stay pending appeal without posting a supersedeas bond.

**IT IS SO ORDERED**.

Dated: February 3, 2012

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　**HONORABLE SARA LIOI**
　　　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**